1

LATHAM & WATKINS LLP
  Andrew M. Gass (Bar No. 259694)
  *andrew.gass@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095

2

3

4

5

  Gabriel S. Gross (Bar No. 254672)
  *gabe.gross@lw.com*
140 Scott Drive
Menlo Park, CA 94025
Telephone:  650.328.4600
Facsimile:  650.463.2600

6

7

8

9

  Elana Nightingale Dawson (*pro hac vice*)
  *elana.nightingaledawson@lw.com*
  Carolyn M. Homer (Bar No. 286441)
  *carolyn.homer@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone:  202.637.2200
Facsimile:  202.637.2201

10

11

12

13

*Attorneys for Defendant Apple Inc.*

14

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

SAN JOSE DIVISION

18

19

CUB CLUB INVESTMENT, LLC,

20

Plaintiff,

21

v.

22

APPLE INC.,

23

Defendant.

24

25

CASE NO. 5:21-cv-06948-LHK

**DEFENDANT APPLE INC.'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO DISMISS**

Hearing Date:  November 4, 2021
Time:  1:30 p.m.
Place:  Courtroom 8 – 4th Floor
Judge:  Hon. Lucy H. Koh

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 2

II.   BACKGROUND ................................................................................................. 3

      A.    Factual Background ................................................................................. 3

      B.    Procedural History .................................................................................. 5

III.  LEGAL STANDARD .......................................................................................... 5

IV.   ARGUMENT ..................................................................................................... 6

      A.    Cub Club has not stated a claim for copyright infringement
            (Count I).................................................................................................. 6

            1.    Copyright does not protect the idea of applying skin tones
                  to emoji. ....................................................................................... 9

            2.    Copyright does not protect human features or color
                  variations...................................................................................... 10

            3.    Cub Club does not state a claim for copyright infringement
                  of any protectable element of its copyrighted works. ............... 13

      B.    Cub Club fails to state a claim for trade dress infringement
            (Count II). .............................................................................................. 15

            1.    The Complaint does not identify the elements of Cub
                  Club's alleged trade dress. .......................................................... 17

            2.    "The insertion of emoji into messages" is a functional task
                  that cannot qualify for trade dress protection. .......................... 18

            3.    Cub Club has not alleged secondary meaning. ......................... 20

      C.    Cub Club's state law claims (Counts III, IV, and V) should be
            dismissed................................................................................................ 20

V.    CONCLUSION................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)............................................................................................11

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987) ........................................................................................11

*Am. Greetings Corp. v. Dan-Dee Imports, Inc.*,
   807 F.2d 1136 (3d Cir. 1986)........................................................................................19

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ........................................................................................13

*Arcsoft, Inc. v. Cyberlink Corp.*,
   153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...........................................................15, 16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................5, 6

*Aurora World, Inc. v. Ty Inc.*,
   No. 09-cv-08463, 2011 WL 13176413 (C.D. Cal. Mar. 14, 2011)................................20

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
   803 F.3d 1032 (9th Cir. 2015) ........................................................................................6

*Blehm v. Jacobs*,
   702 F.3d 1193 (10th Cir. 2012) ....................................................................................11

*Bryant v. Matvieshen*,
   904 F. Supp. 2d 1034 (E.D. Cal. 2012)....................................................................15, 16

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ..........................................................................................7

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ........................................................................................20

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ...........................................................................15, 16, 18

*Coffelt v. Autodesk, Inc.*,
   No. 17-cv-1684, 2017 WL 10403359 (C.D. Cal. Nov. 21, 2017) ...................................6

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ..........................................................................................6

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
    697 F. Supp. 1136 (E.D. Cal. 1987)...................................................................14, 15

*Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*,
    839 F. App'x 95 (9th Cir. 2020) ..............................................................18, 19, 21

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
    No. 15-cv-769, 2015 WL 12731929 (C.D. Cal. May 8, 2015).....................16, 18, 19

*Dickinson v. Ryan Seacrest Enterprises Inc.*,
    839 F. App'x 110 (9th Cir. 2020) ...........................................................................21

*DO Denim, LLC v. Fried Denim, Inc.*,
    634 F. Supp. 2d 403 (S.D.N.Y. 2009) ....................................................................19

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
    958 F.3d 532 (6th Cir. 2020) ..................................................................................13

*Ets-Hokin v. Skyy Spirits, Inc.*
    323 F.3d 763 (9th Cir. 2003) ..................................................................................13

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ..................................................................................6

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)...................................................................................................6

*Fin. Info. Inc. v. Moody's Investors Serv., Inc.*,
    808 F.2d 204 (2d Cir. 1986).....................................................................................10

*Folkens v. Wyland Worldwide, LLC*,
    882 F.3d 768 (9th Cir. 2018) ....................................................................................9

*Fun With Phonics, LLC v. LeapFrog Enterprises, Inc.*,
    No. 09-cv-916, 2010 WL 11404474 (C.D. Cal. Sept. 10, 2010) .......................12, 14

*Great Minds v. Off. Depot, Inc.*,
    945 F.3d 1106 (9th Cir. 2019) ...............................................................................5, 6

*Green Crush LLC v. Paradise Splash I, Inc.*,
    No. 17-cv-1856, 2018 WL 4940825 (C.D. Cal. May 3, 2018)................................20

*Harvey Cartoons v. Columbia Pictures Indus., Inc.*,
    645 F. Supp. 1564 (S.D.N.Y. 1986)........................................................................15

*High Five Threads, Inc. v. Michigan Farm Bureau*,
    No. 20-cv-604, 2021 WL 1809835 (W.D. Mich. May 6, 2021)........................13, 15

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    No. 14-cv-03954, 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) .............................17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

APPLE INC.'S RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

*ID7D Co. v. Sears Holding Corp.*,
No. 11-cv-1054, 2012 WL 1247329 (D. Conn. Apr. 13, 2012) ............................19

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ..............................................................................15, 16

*Kaisha v. Lotte Int'l Am. Corp.*,
No. 15-cv-5477, 2019 WL 8405592 (D.N.J. July 31, 2019),
*aff'd* 986 F.3d 250 (3d Cir. 2021) ........................................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................3

*Kittrich Corp. v. United Indus. Corp.*,
No. 17-cv-06211, 2017 WL 10434389 (C.D. Cal. Oct. 18, 2017) .........................20

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
113 F.3d 373 (2d Cir. 1997)..................................................................................17

*Lepton Labs, LLC v. Walker*,
55 F. Supp. 3d 1230 (C.D. Cal. 2014) ..............................................................15, 16

*Lima v. United States Dep't of Educ.*,
947 F.3d 1122 (9th Cir. 2020) ..............................................................................21

*Marcus v. ABC Signature Studios, Inc.*,
279 F. Supp. 3d 1056 (C.D. Cal. 2017) ..................................................................7

*Masterson v. Walt Disney Co.*,
821 F. App'x 779 (9th Cir. 2020) ................................................................... *passim*

*Mattel, Inc. v. MGA Ent., Inc.*,
616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) .............. *passim*

*Mazer v. Stein*,
347 U.S. 201 (1954)...............................................................................................6

*McGee v. Benjamin*,
No. 08-cv-11818, 2012 WL 959377 (D. Mass. Mar. 20, 2012) .......................12, 14

*Mosaic Brands, Inc. v. The Ridge Wallet LLC*,
No. 20-cv-04556, 2020 WL 5640233 (C.D. Cal. Sept. 3, 2020) ...........................17

*Motorola Inc. v. Qualcomm Inc.*,
No. 97-cv-615, 1997 WL 838877 (S.D. Cal. Apr. 24, 1997),
*aff'd*, 135 F.3d 776 (Fed. Cir. 1998) .....................................................................19

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
783 F.3d 527 (5th Cir. 2015) ................................................................................11

*Passillas v. McDonald's Corp.*,
  No. 88-cv-4065 1989 WL 418779 (C.D. Cal. Apr. 21, 1989),
  *aff'd sub nom. Passillas v. McDonald's Corp.*, 927 F.2d 440 (9th Cir. 1991) .........................11

*Pretty in Plastic, Inc. v. Bunn*,
  793 F. App'x 593 (9th Cir. 2020) .........................................................................................10, 13

*Pretty in Plastic, Inc. v. Bunn*,
  No. 18-cv-6091, 2019 WL 1771654 (C.D. Cal. Feb. 8, 2019),
  *aff'd*, 793 F. App'x 593 (9th Cir. 2020).........................................................................................15

*Profade Apparel, LLC v. Rd. Runner Sports, Inc.*,
  No. 18-cv-1254, 2020 WL 5230490 (S.D. Cal. Sept. 2, 2020)...............................................19

*Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*,
  549 F. App'x 913 (11th Cir. 2013) ..............................................................................................13

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led
  Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .............................................................................7, 12

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ..............................................................................................7, 8, 14

*Sleep Sci. Partners v. Lieberman*,
  No. 09-cv-04200, 2010 WL 1881770 (N.D. Cal. May 10, 2010)...........................................16

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998)..........................................................................................................12

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd*,
  No. 19-cv-1700, 2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) ...........................................20

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .....................................................................................................21

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23 (2001)..........................................................................................................................18

*Tropic Ocean Airways, Inc. v. Floyd*,
  598 F. App'x 608 (11th Cir. 2014) ..............................................................................................20

*Wal-Mart Stores, Inc. v. Samara Bros.*,
  529 U.S. 205 (2000)................................................................................................................16, 20

*Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*,
  No. 19-cv-00494, 2019 WL 9050859 (C.D. Cal. Aug. 5, 2019) ............................................17

*Williams v. 3DExport*,
  No. 19-cv-12240, 2020 WL 532418 (E.D. Mich. Feb. 3, 2020)........................................8, 11

*YZ Prods., Inc. v. Redbubble, Inc.*,
   No. 20-cv-06615, __ F. Supp. 3d __, 2021 WL 2633552 (N.D. Cal. June 24,
   2021) ...................................................................................................................15, 16, 17, 18

## STATUTES

15 U.S.C. § 1125(a)(3)....................................................................................................16

17 U.S.C. § 102(b) .........................................................................................................6

28 U.S.C. § 1367(c) .......................................................................................................21

## RULES

Fed. R. Evid. 201(b)(1)–(2) ...........................................................................................3

Rule 12(b)(6)...................................................................................................................5

## REGULATION

37 C.F.R. § 202.1(a) .....................................................................................................12

1

## <u>NOTICE OF RENEWED MOTION AND RENEWED MOTION</u>

2      PLEASE TAKE NOTICE that, on November 4, 2021 at 1:30p.m., or as soon thereafter as

3  the matter may be heard, before the Honorable Lucy H. Koh of the United States District Court

4  for the Northern District of California, at the San Jose Courthouse, Courtroom 8 - 4th Floor, 280

5  South 1st Street, San Jose, California, Defendant Apple Inc., through its undersigned counsel, will,

6  and hereby does, move to dismiss Plaintiff Cub Club Investment, LLC's Complaint pursuant to

7  Federal Rule of Civil Procedure 12(b)(6).

8      Apple seeks in its Renewed Motion to Dismiss the dismissal of the Complaint with

9  prejudice.  The Renewed Motion to Dismiss is based on this Notice, the supporting Memorandum

10  of Points and Authorities below, the complete files and records in this action, and any additional

11  material and arguments as may be considered in connection with the hearing on the Motion.

12

## <u>ISSUES TO BE DECIDED</u>

13      (1) Whether Plaintiff's claim for copyright infringement (Count I), which is based entirely

14  on allegations of copying the idea of depicting human gestures and body parts in varying skin

15  tones, rather than any copyrightable expression of that idea, should be dismissed under Rule

16  12(b)(6) for failing to state a claim upon which relief can be granted.

17      (2) Whether Plaintiff's claim for trade dress infringement (Count II), which does not

18  identify any concrete elements of the purported trade dress, and is based entirely on alleged

19  copying of the functional user interface for a smartphone application for which no secondary

20  meaning has been alleged, should be dismissed under Rule 12(b)(6) for failing to state a claim

21  upon which relief can be granted.

22      (3) Whether Plaintiff's state law claims (Counts III, IV, and V), which are based on the

23  same allegations as its federal copyright and trade dress claims, should be dismissed as preempted

24  by federal law.

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Copyright protects only the expression of ideas, not the ideas themselves.  Plaintiff Cub Club Investment has filed an action that contravenes that bedrock legal principle.  This case is about "emoji," which are small graphical images made available in text-messaging and similar applications, sometimes depicting a representation of a human body part, like a hand making a thumbs-up signal.  Cub Club alleges it has obtained copyright registrations for several body-part emoji, each in five different shades, to approximate the naturally occurring variation in humans' skin tones.  Apple offers its own body-part emoji, in a different suite of five colors, featuring different renditions of the real-world objects depicted: differently contoured fingers, differently angled thumbs, and so on.  Cub Club asserts that Apple's emoji infringe the copyrights in Cub Club's emoji, on the theory that Cub Club's exclusive rights prevent anyone else from offering emoji depicting the same body part as Cub Club's emoji, in five different hues.  That contention is incorrect as a matter of law.  It depends on the premise that Cub Club owns a copyright in the *idea* of chromatically varying emoji, irrespective of whether an alternative rendition of the same concept implements the *idea* differently.  Because the Copyright Act and resulting judicial doctrine are crystal clear that Cub Club's exclusive rights do not in fact preclude others from implementing the idea of emoji with different skin tones—the very activity Cub Club says gives rise to liability here—Cub Club's copyright infringement allegations fail to state a claim.

Cub Club's trade dress claim, and its related state law claims, fare no better.  Trade dress, like a trademark, merits legal protection only when it (1) is non-functional and (2) serves as an indicator of the source of goods or services.  Cub Club fails to sufficiently allege either.  To the contrary, the "dress" that the Complaint accuses Apple of having copied is plainly functional:  a smartphone interface that lets users select and insert emoji "when sending messages on an Apple iPhone."  And the Complaint includes no factual allegations at all suggesting that any aspect of Cub Club's emoji product has acquired secondary meaning in the minds of consumers, as the law requires.

1     Because the Complaint is legally deficient on its face, Apple respectfully asks the Court to

2 dismiss it in its entirety.

3 **II.    BACKGROUND**

4     **A.    Factual Background[1]**

5     In 2013, Katrina A. Parrott's daughter had an idea—that it would "be nice to have emoji

6 that look like the person sending them." (Compl. ¶ 7.) Despite emoji being "ubiquitous" on both

7 smartphones and social media platforms, there were limited color options for emoji at that time.

8 (*Id.*) Spurred by her daughter's idea, Mrs. Parrott saw an opportunity to build a business while

9 promoting the concept of diversity in emoji. (*Id.* ¶¶ 7–8.) To do so, she founded Cub Club

10 Investment, LLC and created iDiversicons, which she

11 describes as "the world's first diverse emoji." (*Id.*

12 ¶ 7.) Cub Club then released the iDiversicons

13 application on the Apple App Store on October 11,

14 2013. (*Id.* ¶ 8.) The application allows users to insert

15 iDiversicons emoji into text messages using the

16 keyboard interface shown to the right. (*Id.* ¶¶ 18, 73.)



17     After launching the iDiversicons app, Mrs.

18 Parrott joined a consortium that deals with

19 standardization of emoji throughout the technology industry, called "Unicode."[2] She became

---

[1] For purposes of this motion, Apple accepts the Complaint's allegations as true.

[2] The Unicode Consortium is a non-profit corporation founded in 1991 that, through its Unicode Technical Committee, develops and maintains the Unicode Standard. (*See generally* Compl. ¶¶ 11–14.) The Unicode Standard specifies the visual representation of text or symbols in software used for digital communications. (*See generally* Compl. ¶ 11); The Unicode Consortium, https://unicode.org/consortium/consort.html. When device manufacturers use the Unicode Standard, unique text and emoji sent from one manufacturer's devices will result in the equivalent text and emoji being displayed on another manufacturer's devices, and vice versa. *See generally* The Unicode Consortium, https://unicode.org/consortium/consort.html. Although the Complaint extensively references the Unicode Consortium, Unicode Technical Committee, and Unicode Standard (Compl. ¶¶ 11–14, 16, 20–22, 26, 32, 37, 43), it does not explain any of this information. Apple thus provides it for context, which the Court can either take judicial notice of or disregard. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (when ruling on a motion to dismiss, a court may take judicial notice of an adjudicative fact if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (citing Fed. R. Evid. 201(b)(1)–(2)).

involved with the Unicode Technical Committee "to raise awareness among technology leaders about digital diversity and inclusion issues." (*Id.* ¶ 11.)  As part of that latter effort, Mrs. Parrott submitted multiple proposals to the Unicode Technical Committee advocating for the adoption of emoji with skin-tone variation by the Unicode Standard.  (*Id.* ¶¶ 11–14.)  Mrs. Parrott also presented her proposals at multiple Unicode Technical Committee Meetings, pushing the Committee to incorporate the iDiversicons emoji into an updated Unicode Standard for emoji with skin-tone variation. (*Id.*)

While attending one Unicode Technical Committee meeting in May 2014, Mrs. Parrott met Apple Senior Software Engineer Peter Edberg.  (*Id.* ¶¶ 22, 26.)  After they met, Mr. Edberg reviewed the iDiversicons website and Mrs. Parrott gave him a thumb drive with a sampling of iDiversicons emoji (*id.* ¶¶ 26, 29)—that is, the same emoji Mrs. Parrott was pushing the entire Unicode Technical Committee to adopt (*id.* ¶¶ 11, 14, 43).  Around the same time, Mr. Edberg helped Mrs. Parrott set up a meeting with Apple's then-Senior Director for Frameworks and Fonts, Celia Vigil, "to explore partnership opportunities between Apple and [Cub Club]." (*Id.* ¶¶ 27–28.) Mr. Edberg also shared with Ms. Vigil the sampling of iDiversicons emoji he had received from Mrs. Parrott.  (*Id.* ¶ 30.)

Mrs. Parrott and Mr. Edberg remained in touch over the following months, corresponding about the Unicode Standard, Mrs. Parrott's iDiversicons app, and Mrs. Parrott's efforts related to representations of diversity on mobile platforms. (*Id.* ¶¶ 37–38.) Mr. Edberg remained supportive of Mrs. Parrott throughout that time, responding to technical questions she posed (*id.* ¶ 41), and giving her feedback on a paper she had written entitled "Mobile Diversity Research" (*id.* ¶ 39).

On October 23, 2014, Mr. Edberg told Mrs. Parrott that Ms. Vigil did not see an opportunity for Apple to partner with Cub Club, and that Apple would be relying on its "own human interface designers to develop diverse emoji based on iDiversicons® emoji." (*Id.* ¶ 42.)  Notwithstanding that news, Mrs. Parrott continued to participate in the Unicode Technical Committee, giving another presentation to the Committee on October 28, 2014, this time on "using a color modifier pallet[te] to implement the five skin tone options for diverse emoji." (*Id.* ¶ 43.)

On April 9, 2015, Apple released its "first diverse emoji . . . using the five skin tone keyboard modifier pallet[te]" shown here.  (*Id.* ¶ 46.)  A cursory comparison between the particular five colors in Cub Club's emoji and the particular five colors in Apple's emoji reveals that they are not the same five colors. (*See id.* ¶ 52.)



### B.    Procedural History

Five years later, Cub Club sued Apple in the Western District of Texas.  According to Cub Club, the "five skin tone version[s]" of Apple's emoji infringe Cub Club's copyrights "covering emoji with five skin tones."  (*Id.* ¶¶ 9, 52, 65.)  Cub Club also alleges Apple infringed its trade dress in the "designs and appearances of the iDiversicons emoji," such as the keyboard that allows users to insert emoji with different skin tones.  (*Id.* ¶¶ 17–18, 74.)  In light of the foregoing, Cub Club asserts claims for federal copyright infringement (Count I); federal trade dress infringement under the Lanham Act (Count II); unfair competition (Count III); misappropriation (Count IV); and unjust enrichment (Count V).

On November 24, 2020, Apple filed a motion to dismiss Cub Club's complaint (Dkt. 22), as well as a motion to transfer this case to the Northern District of California (Dkt. 21).  On September 7, 2021, the Court granted Apple's motion to transfer, and transferred this case to the Northern District of California.  (Dkt. 28.)  Thereafter, the parties stipulated and this Court entered an order permitting Apple to file a renewed motion to dismiss in light of the change of venue and controlling Circuit law.  (Dkt. 47.)  Apple now files this renewed motion to dismiss.

## III.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To determine whether dismissal is warranted, the Court accepts as true the well-

1   pleaded allegations in a complaint and construes those facts in the plaintiff's favor.   *Id.*[3]

2   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

3   dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  If a complaint's well-pleaded

4   allegations do not show "more than a sheer possibility that a defendant has acted unlawfully," the

5   complaint must be dismissed.  *See id.* (quoting *Iqbal*, 556 U.S. at 678).

6   **IV.    ARGUMENT**

7       **A.    Cub Club has not stated a claim for copyright infringement (Count I).**

8       "Not all copying . . . is copyright infringement." *Feist Publications, Inc. v. Rural Tel. Serv.*

9   *Co.*, 499 U.S. 340, 361 (1991).  That is because copyright "protects authors' original expression

10  in their work but does not protect ideas and facts." *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir.

11  2020); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of

12  authorship extend to any idea[.]").  This well-established principle, known as the idea-expression

13  distinction, reflects the fact that "copyright assures authors the right to their original expression,

14  but encourages others to build freely upon the ideas and information conveyed by a work."

15  *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1037 (9th Cir. 2015)

16  (quoting *Feist*, 499 U.S. at 349–50).  Because of this principle, simply establishing that "works of

17  art share an idea" does not establish copyright infringement.  *Mattel, Inc. v. MGA Ent., Inc.*, 616

18  F.3d 904, 917 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010); *see also Coffelt v.*

19  *Autodesk, Inc.*, No. 17-cv-1684, 2017 WL 10403359, at *1 (C.D. Cal. Nov. 21, 2017) (citing *Mazer*

20  *v. Stein*, 347 U.S. 201, 217 (1954)).

21       To state a claim for copyright infringement, then, a plaintiff must do more than simply

22  allege copying.  Instead, the plaintiff must advance plausible, non-conclusory allegations of

23  copying of the protectable elements of its copyrighted work—that is, the author's particularized,

24  protected expression rather than the underlying ideas that gave rise to the author's expression.  *See*

25  *Feist*, 499 U.S. at 349 ("[N]o matter how much original authorship the work displays, the facts

26  and ideas it exposes are free for the taking[.]"); *see also Masterson v. Walt Disney Co.*, 821 F.

27  App'x 779, 781 (9th Cir. 2020) (affirming dismissal of infringement claim where, *inter alia*, "[t]he

28

[3] Internal quotation marks and citations omitted throughout unless otherwise noted.

alleged similarities between the characters [were] unprotectable"); *Mattel*, 616 F.3d at 917. Specifically, a plaintiff must allege, *inter alia*, "that the works at issue are substantially similar in their protected elements." *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).

When evaluating a claim for copyright infringement, courts conduct a two-part analysis to determine substantial similarity—"an 'extrinsic test' and an 'intrinsic test.'" *Masterson*, 821 F. App'x at 781 (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)).   Although a plaintiff must satisfy both of these tests to prevail on such a claim, at the motion to dismiss stage, courts consider only whether the extrinsic test has been satisfied, which can be "decided by the court as a matter of law." *Id.* (quoting *Rentmeester*, 883 F.3d at 1118).  "In the extrinsic test, the court first filters out unprotectable elements, which are 'primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject).'" *Id.*   "The remaining protectable elements are then compared 'to assess similarities in the *objective details* of the works.'" *Masterson*, 821 F. App'x at 781–82 (quoting *Rentmeester*, 883 F.3d at 1118); *see also Mattel*, 616 F.3d at 913 ("At the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable.").  The question a court must answer, then, is whether the "works [are] substantially similar beyond the fact that they depict the same idea[.]" *Mattel*, 616 F.3d at 917.

The Ninth Circuit's decision in *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), illustrates the importance of filtering out unprotected ideas from a plaintiff's claimed copyrights.  There, a glass artist—Richard Satava—brought a suit for copyright infringement based on another artist's copying of the Satava's glass-in-glass jellyfish sculptures.  *Satava*, 323 F.3d at 807–09.  After detailing the limitations on copyright protection, the court stated that, as a result, "no copyright protection may be afforded to the idea of producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow from the idea of such a sculpture." *Id.* at 810.  The court then detailed what Satava could not do given those limitations.  "Satava may not," the court

explained, "prevent others from copying aspects of his sculptures resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium." *Id.* Nor could he "prevent others from depicting jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess those body parts." *Id.* Similarly, he could not "prevent others from depicting jellyfish in bright colors, because many jellyfish are brightly colored." *Id.* And he could "not prevent others from depicting jellyfish swimming vertically, because jellyfish swim vertically in nature and often are depicted swimming vertically." *Id.* He also could not prevent others from "depicting jellyfish" either "within a clear outer layer of glass . . . [or] almost filling the entire volume" because the former "is the most appropriate setting for an aquatic animal" and the latter reflects a "proportion [that] is standard in glass-in-glass sculpture." *Id.* In short, Satava's claimed copyright in his glass sculptures covered only "unprotectable ideas and standard elements" that are "part of the public domain." *Id.* Because "[t]hey are the common property of all," the court concluded, Satava could "not use copyright law to seize them for his exclusive use." *Id.*

Here, three elements of Cub Club's works are relevant to the Court's analysis—and show why Cub Club, like Satava, is claiming infringement of unprotectable ideas and standard elements that are the "common property of all." *See id.* First, there is the idea of taking an emoji representing a human body part and making it available in five different colors. Second, there is the selection of body parts as emoji, *ab initio*. And third, there is the particular rendition of those body parts—both in the contours of the shapes, and in the five specific colors selected. Cub Club alleges infringement only of the first—the idea of body-part emoji appearing in five colors. (*See, e.g.*, Compl. ¶ 9 (copyrights "covering emoji with five skin tones"); *id.* ¶ 11 (presenting iDiversicons proposal for "five skin tone emoji standard"); *id.* (presenting iDiversicons "solution of using a color modifier pallet[te] to implement the five skin tone options on digital keyboards"); *id.* ¶ 16 (alleging Mrs. Parrott created "five skin tone emoji"); *id.* ¶ 46 (accusing Apple of releasing "its first diverse emoji . . . using the five skin tone keyboard modifier pallet[te]"); *id.* ¶ 49 (accusing Apple of releasing "at least four versions of its emoji with five skin tone options").) But because copyright does not protect such ideas, Cub Club's claim fails. *See Williams v. 3DExport*, No. 19-cv-12240, 2020 WL 532418, at *3 (E.D. Mich. Feb. 3, 2020) (granting motion to dismiss because,

*inter alia*, "even if [Plaintiff] was the first to think up the anime, . . . he could not lay claim to all anime that ever was or will be produced").  Even if Cub Club had alleged infringement of the latter two elements, it would fare no better.  As explained below, naturally occurring human characteristics are not copyrightable either, and the Complaint itself establishes that Apple did not copy the actual lines Cub Club used to draw its emoji, or its choice of which body parts to feature. In sum, Cub Club has not alleged and cannot allege any infringement of the protectable aspects of its emoji.  It has therefore failed to state a claim.

### 1.   Copyright does not protect the idea of applying skin tones to emoji.

The fundamental, fatal flaw of Cub Club's copyright claim is that it is based entirely on the contention that Apple infringed the idea of applying five skin tones to emoji that represent human body parts.  Cub Club alleges its copyright protects "emoji with five skin tones" (Compl. ¶¶ 9, 16.); Mrs. Parrott created iDiversicons as "the world's first diverse emoji" (Compl. ¶ 7); iDiversicons has a "mission of bringing diverse emoji to the world" with a "five skin tone emoji standard" (*id.* ¶ 11); and Mrs. Parrott is recognized as the "creator of five skin tone emoji" (*id.* ¶ 16).  Cub Club then claims that Apple infringes its copyrights because "Apple's five skin tone version[s]" of various body-part emoji infringe Cub Club's "five skin tone" versions of emoji depicting the same body part.  (*Id.* ¶ 52; *see also id.* ¶ 46 ("On April 9, 2015, Apple released its first diverse emoji ('Accused Products') using the five skin tone keyboard modifier pallet[te].").) In short, Cub Club makes no secret that its copyright claim rises and falls on the copyrightability of the idea of applying five skin tones to emoji.  And because of that, its claim fails.

Copyright does not protect the idea of applying five different skin tones to emoji because ideas are not copyrightable.  "[I]deas, first expressed in nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018).  "Otherwise, the first person to express any idea would have a monopoly over it." *Mattel*, 616 F.3d at 913.  Yet that is exactly what Cub Club is trying to do—assert an exclusive right over the general concept and practice of applying different skin tones to emoji.  (*See, e.g.*, Compl. ¶ 9 (asserting copyrights "covering emoji with five skin tones").)  Because copyright law does not afford Cub Club that right, its copyright

1    infringement claim must be dismissed.  *See Masterson*, 821 F. App'x at 782 (affirming dismissal

2    of copyright claim where "[a]ll of the asserted similarities must be filtered out"); *see also Pretty*

3    *in Plastic, Inc. v. Bunn*, 793 F. App'x 593, 593–94 (9th Cir. 2020) (affirming dismissal of copyright

4    claim where "the unicorn depiction over which [the plaintiff] asserted copyright protection did not

5    contain the 'quantum of originality needed to merit copyright protection,' because it depict[ed] a

6    unicorn as the mythical creature is often portrayed").

7           The claim is equally deficient to the extent it is premised on the suggestion that the specific

8    number of colors in Cub Club's emoji—five—is the thing about them that is copyrightable.  That

9    is an equally abstract, unprotectable *idea*.  To be sure, Cub Club could potentially assert a copyright

10   interest in its choice of particular colors A through E—at least to the extent that the colors were

11   themselves *creative* selections, rather than attempts to faithfully reprise features of the human body

12   (which Cub Club's selections do in fact appear to have been, as discussed below).  But the concept

13   of making five variants of a given work of creative expression is not, itself, part of what is protected

14   by the copyright in the creative expression.  *Cf. Fin. Info. Inc. v. Moody's Investors Serv., Inc.*,

15   808 F.2d 204 (2d Cir. 1986) (holding that the listing of five facts on municipal bonds cards lacked

16   sufficient creativity to merit copyright protection).

17                    **2.      Copyright does not protect human features or color variations.**

18          Cub Club does not allege that Apple infringes any other aspect of its copyrighted works,

19   presumably because it knows any such claim would fail.  If Cub Club had made such an allegation,

20   the Court would first have to analyze what remains of Cub Club's works once the unprotectable

21   idea of applying different skin tones to emoji is filtered out.  Once that is done, what remains are

22   Cub Club's emoji themselves—body parts in various natural poses, such as the pointed fingers,

23   thumb, and fist shown immediately below, along with the specific shades it chose for them:

   

27   (Compl. at 12–16.)  The Court would then need to determine whether those remaining aspects of

28   Cub Club's works were (a) protectable and (b) infringed.  The answer to both questions is no.

*Body Part Emoji.*  The use of body parts, in various natural shapes, is not copyrightable because there is "no copyright protection in general human features." *Blehm v. Jacobs*, 702 F.3d 1193, 1206 (10th Cir. 2012).  "[E]veryday activities, common anatomical features, and natural poses are ideas that belong to the public domain." *Id.* at 1204.  As a result, "arms, legs, faces, and fingers [on cartoon figures] . . . are not protectable elements." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc*., 783 F.3d 527, 551 (5th Cir. 2015) (quoting *Blehm*, 702 F.3d at 1204) (alterations in original).  "[S]tock similarities" in human depictions, like "race, gender, and hair color," are likewise unprotectable. *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 67, 72 (2d Cir. 2020); *see also Mattel*, 616 F.3d at 916 (same); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) (plaintiffs may "place no reliance upon any similarity in expression resulting from . . . the physiognomy of dinosaurs").

In light of the foregoing, Cub Club's copyrights do not extend to the adoption of emoji that, as a general matter, reflect human body parts in various natural shapes.  That is presumably one reason why Cub Club does not claim that its exclusive rights cover the relevant hand signals or body parts themselves or that Apple infringes its copyrights simply by having emoji that reflect the same hand signals or body parts as Cub Club's emoji. (*See, e.g.*, Compl. ¶ 52.)  As Cub Club seemingly recognizes, no one can own and monopolize the images of human features used in digital communications. *See, e.g.*, *Williams*, 2020 WL 532418, at *3.  Just as one cannot hold a copyright "over the idea of a cartoon figure holding a birthday cake, catching a Frisbee, skateboarding, or engaging in various other everyday activities," *Blehm*, 702 F.3d at 1204, neither can Cub Club enjoy copyright protection in the idea of cartoon fists, ears, or pointing hands (Compl. ¶ 52). *See, e.g.*, *Passillas v. McDonald's Corp.*, No. 88-cv-4065, 1989 WL 418779, at *4 (C.D. Cal. Apr. 21, 1989), *aff'd sub nom. Pasillas v. McDonald's Corp.*, 927 F.2d 440 (9th Cir. 1991) ("Pasillas cannot have a copyright on the idea that a quarter moon is in the shape of a crescent, or on the idea that a moon face will be a white or off-white color.  Likewise, he cannot claim copyright protection for all man in the moon masks which incorporate human features," as "[h]uman features, *e.g.*, eyes, nose and mouth, are indispensable elements in the depiction of the idea of a man in the moon, be it mask, drawing or figurine.").  Thus, the mere fact that Apple and

Cub Club both have emoji that reflect the same hand signals does not and cannot give rise to a claim of copyright infringement.

*Emoji Colors.*  Nor can Cub Club claim protection over, and infringement of, the particular colors that it chose.  And Cub Club does not even suggest as much.  Rather, it simply alleges that Apple—like Cub Club—uses five different colors in its emoji to represent five different skin tones.  (*Compare* Compl. ¶ 9, *with id.* ¶ 52.)  And for good reason.  First, copyright protection does not extend to "mere variations of . . . coloring." 37 C.F.R. § 202.1(a); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998) (declining to "view[] the individual colors chosen by [the plaintiff] as the protected elements upon which defendants encroached").  Design choices that reflect race or other naturally occurring differences, including the selection of color, are likewise unprotected.  *Mattel*, 616 F.3d at 916 (district court correctly filtered out "age, race, [and] ethnicity" as unprotected traits that cannot support a copyright infringement claim); *Fun With Phonics, LLC v. LeapFrog Enterprises, Inc.*, No. 09-cv-916, 2010 WL 11404474, at *6 (C.D. Cal. Sept. 10, 2010) ("The choice of a similar color, taken alone, is insufficient basis . . . to find substantial similarity under the extrinsic test.").  And second, *Apple's five colors are not the same as Cub Club's five colors*.  It is perfectly appropriate for the Court to make that assessment on a motion to dismiss, where the matter is beyond reasonable dispute and the relevant works in suit appear in the pleadings.  *See, e.g.*, *Masterson*, 821 F. App'x at 781 ("motion to dismiss is proper when '[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar'" (quoting *Rentmeester*, 883 F.3d at 1123)); *see also McGee v. Benjamin*, No. 08-cv-11818, 2012 WL 959377, at *9 (D. Mass. Mar. 20, 2012) (granting motion to dismiss copyright claim based on comparison of two musical cartoons set in the same location).[4]

---

[4] Cub Club cannot seriously dispute that skin tones are naturally occurring, and thus non-copyrightable.  Even the Unicode Standard—which Cub Club references throughout its Complaint (Compl. ¶¶ 11, 14, 37)—relied on the universality of skin tone when adopting industry-standard skin tones, choosing to rely on "the Fitzpatrick scale, a recognized standard for dermatology." *See* Unicode Emoji Version 1.0 (June 9, 2015), http://www.unicode.org/reports/tr51/tr51-3-archive.html.

1
2

### 3.    Cub Club does not state a claim for copyright infringement of any protectable element of its copyrighted works.

3        Once the unprotectable elements of Cub Club's works are filtered out—the idea of applying

4    five skin tones to emoji and the natural shapes and colors of Cub Club's emoji—all that remains

5    are the exact lines Cub Club used to draw its emoji, such as the lines that comprise the hand below:

6
7
8
9

 

10    (*See* Compl. ¶ 52.)  Those lines are the only aspect of Cub Club's emoji that are even arguably

11    subject to copyright protection.  And, as a result, they are the only aspect of Cub Club's emoji that

12    can give rise to a claim of copyright infringement.

13        Where, as here, the only aspect of a work that is copyrightable is the "stylized rendering"

14    of an image that is not otherwise copyrightable, copyright protection for the work is "thin" and

15    "only protect[s] against virtually identical copying."  *Progressive Lighting, Inc. v. Lowe's Home*

16    *Centers, Inc.*, 549 F. App'x 913, 920 n.5 (11th Cir. 2013) (citing *Ets-Hokin v. Skyy Spirits, Inc.*

17    323 F.3d 763, 766 (9th Cir. 2003)).  Put another way, when a "basic idea[]" can only be expressed

18    in a "limited number of ways," such as a thumb pointing upwards or an index finger pointing to

19    indicate direction, "only 'thin' protection, against virtually identical copying, is appropriate."

20    *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *see also Mattel*, 616

21    F.3d at 915 ("[t]he expression of an attractive young, female fashion doll with exaggerated

22    proportions is . . . highly constrained" and thus "entitled to only thin copyright protection against

23    virtually identical copying"); *Threads, Inc. v. Michigan Farm Bureau*, No. 20-cv-604, 2021 WL

24    1809835, at *3 (W.D. Mich. May 6, 2021) (finding no "copyright protection over a simple outline

25    of a human hand" as it "is the most basic representation of something from nature, familiar to

26    every child who has ever traced her own hand").  As a result, where, as here, a plaintiff holds only

27    a "thin" copyright in the works at issue, the plaintiff must allege "virtually identical" copying.

28    *Mattel*, 616 F.3d at 913–15; *see also Pretty in Plastic*, 793 F. App'x at 594; *Enchant Christmas*

1   *Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535, 538 (6th Cir. 2020) (affirming denial

2   of preliminary injunction because copyright protection for animal ice sculptures was "very thin").

3         Cub Club does not even attempt to allege identical copying by Apple.  (*See* Compl. ¶ 52.)

4   Nor could it, as a simple side-by-side comparison of a Cub Club emoji and an Apple emoji

5   demonstrates:



| *iDiversicons® Emoji* | Apple iOS 13.3 |
| Registered: 07/31/2013 (*09/26/2013) | Released: 12/10/2019 |
| Copyright No. VAu 001-152-200 | |

11   Apple's artwork is unquestionably different.  (*See id.*)  Whereas Cub Club's image is a realistic

12   depiction of a hand, shown in a flat color with sharp black outlines, Apple's is more cartoonish,

13   with three-dimensional shading and soft outlines.  (*Id.*)  Cub Club's thumb is thin, tall, and angular,

14   while Apple's thumb is short and rounded.  (*Id.*)  Cub Club's wrist and palm have creases, while

15   Apple's wrist and palm are smooth.  (*Id.*)  Notably, even if skin tone were a protectable element

16   of the design (and it is not), the depictions of pigmentation are not the same—Apple's rendering

17   is a darker brown.  (*Id.*)  Any similarities between the two emoji can be attributed to the fact that

18   they are expressions of the same unprotectable idea:  human hand gestures represented in a variety

19   of skin tones.  (*See generally id*. (providing selected side-by-side comparisons).)  And such

20   similarities cannot support a claim of copyright infringement.  *See, e.g.*, *Fun With Phonics*, 2010

21   WL 11404474, at *6; *McGee*, 2012 WL 959377, at *9; *Cory Van Rijn, Inc. v. Cal. Raisin Advisory

22   Bd.*, 697 F. Supp. 1136, 1139–45 (E.D. Cal. 1987) (granting motion to dismiss copyright claim

23   based on comparison of two sets of dancing, humanized raisins).

24         In sum, filtering out the unprotectable elements of Cub Club's emoji demonstrates Cub

25   Club fails to plausibly allege, with any factual specificity, that Apple copied any protectable

26   elements of Cub Club's works.  But that is what the law requires to state a legally viable claim for

27   copyright infringement.  *See Masterson*, 821 F. App'x at 781–82; *see also Satava*, 323 F.3d at 812.

28   Cub Club's Complaint provides little more than legal labels and conclusory assertions:  "Apple's

emoji are the same or at least substantially similar to the copyrighted *iDiversicons®* emoji." (Compl. ¶¶ 51–52.)  It then adds pictures, hoping the Court will ignore the law and be swayed by side-by-side comparisons that, at most, misleadingly play up similarities between unprotectable elements like human features and skin colors.  *See Pretty in Plastic, Inc. v. Bunn*, No. 18-cv-6091, 2019 WL 1771654, at *5 (C.D. Cal. Feb. 8, 2019), *aff'd*, 793 F. App'x 593 (9th Cir. 2020); *High Five Threads*, 2021 WL 1809835, at *3–4 (finding no infringement when the defendant's hand map included "different colors . . . unique shape and positioning of the thumbs and fingers . . . and [] shorter fingers"); *Cory Van Rijn*, 697 F. Supp. at 1145; *Harvey Cartoons v. Columbia Pictures Indus., Inc.*, 645 F. Supp. 1564, 1569–71 (S.D.N.Y. 1986) (finding no infringement where the only similarity between plaintiff's and defendant's works was that both were "simple line drawing[s] of a cartoon ghost").  Once one looks beyond those unprotectable elements, the appropriate disposition here is clear: Cub Club's claim for copyright infringement must be dismissed.

### B.    Cub Club fails to state a claim for trade dress infringement (Count II).

Cub Club also fails to state a legally viable claim for trade dress infringement.  "Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'"  *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)).  When alleging a trade dress claim, a plaintiff must "includ[e] in [its] complaint 'a complete recitation of the concrete elements of [its] alleged trade dress.'"  *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1069 (N.D. Cal. 2015) (quoting *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014)); *see also YZ Prods., Inc. v. Redbubble, Inc.*, No. 20-cv-06615, __ F. Supp. 3d __, 2021 WL 2633552, at *7 (N.D. Cal. June 24, 2021) (collecting cases).  Simply providing images of the alleged trade dress along with the allegedly infringing content does not suffice.  *YZ Prods.*, 2021 WL 2633552, at *8.  Nor does a "general description" of the alleged trade dress.  *Bryant v. Matvieshen*, 904 F. Supp. 2d 1034, 1046 (E.D. Cal. 2012).  Rather, a complaint must include "a complete recitation of the concrete

1    elements of [the] alleged trade dress." *Arcsoft*, 153 F. Supp. 3d at 1069 (quoting *Lepton Labs*, 55

2    F. Supp. 3d at 1240)).

3         Importantly, not every product's "overall appearance" qualifies for trade dress protection.

4    To be protectable, trade dress must be ornamental; it cannot encompass a product's functional

5    elements.  *See* 15 U.S.C. § 1125(a)(3); *Clicks Billiards*, 251 F.3d at 1258 ("Trade dress protection

6    extends only to design features that are nonfunctional."); *Deckers Outdoor Corp. v. Fortune

7    Dynamic, Inc.*, No. 15-cv-769, 2015 WL 12731929, at *4–5 (C.D. Cal. May 8, 2015) (dismissing

8    complaint for failure to allege non-functionality).

9         Although a party can register its trade dress for protection, registration is not a prerequisite

10   for suit.  *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).  Where, as here, a

11   plaintiff's alleged trade dress is an unregistered product design, the plaintiff's complaint must do

12   four things.  First, it must identify the discrete elements it claims are protected by trade dress in

13   order to give the defendant adequate notice of the claimed protection.  *See YZ Prods.*, 2021 WL

14   2633552, at *7–8; *Bryant*, 904 F. Supp. 2d at 1046; *see also, e.g.*, *Sleep Sci. Partners v. Lieberman*,

15   No. 09-cv-04200, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010).  Second, it must allege "that

16   the matter sought to be protected is not functional."  15 U.S.C. § 1125(a)(3); *Clicks Billiards*, 251

17   F.3d at 1258.  Third, it must allege that the claimed trade dress "has acquired distinctiveness," such

18   as by developing a "secondary meaning, which occurs when, in the minds of the public, the

19   primary significance of [the design] is to identify the source of the product rather than the product

20   itself."  *Wal-Mart*, 529 U.S. at 211; *Deckers*, 2015 WL 12731929, at *3.  And fourth, it must allege

21   that the plaintiff's trade dress is "likely to be confused" with the defendant's "products by members

22   of the consuming public."  *Int'l Jensen*, 4. F.3d at 823.  Though Cub Club's trade dress claim

23   falters at every step, its claim is most easily disposed of because (1) it fails to identify the discrete

24   elements of the purported trade dress, (2) what it does identify as its alleged trade dress are

25   functional aspects of Cub Club's emoji-insertion product, and (3) it does not allege that the

26   purported trade dress has acquired secondary meaning.

27

28

1        **1.      The Complaint does not identify the elements of Cub Club's alleged**

2                    **trade dress.**

3        Cub Club's failure to include in the complaint "a complete recitation of the concrete

4   elements of [its] alleged trade dress" is fatal to its trade dress claim.  *Arcsoft*, 153 F. Supp. 3d at

5   1069–70.  Rather than provide the requisite recitation of elements, Cub Club says that its trade

6   dress "includes the overall look and feel of [Cub Club's] products, including the insertion of an

7   emoji into messages."  (Compl ¶ 73.)  "[F]ocus on the overall look of a product," however, "does

8   not permit a plaintiff to dispense with an articulation of the specific elements which comprise its

9   distinct dress, because the court must be able to evaluate the claim and narrowly tailor relief."

10  *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. 14-cv-03954, 2014 WL 6892141,

11  at *3 (C.D. Cal. Nov. 5, 2014) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113

12  F.3d 373, 381 (2d Cir. 1997)).  Here, the Complaint is devoid

13  of such an articulation.

14        Instead, the Complaint includes the purportedly

15  "exemplary image" of Cub Club's trade dress shown on the

16  right.  (*Id.*)  Simply including a picture—which is essentially

17  all Cub Club does—does not absolve Cub Club of its

18  obligation to "list the concrete elements that constitute the

19  alleged trade dress."  *YZ Prods.*, 2021 WL 263352, at *7.

20  Courts thus routinely dismiss trade dress claims where, as

21  here, the plaintiff fails to "clearly articulate what comprises

22  the claimed trade dress" and instead includes an image.

23  *Mosaic Brands, Inc. v. The Ridge Wallet LLC*, No. 20-cv-

24  04556, 2020 WL 5640233, at *5 (C.D. Cal. Sept. 3, 2020)

25  (quoting *Homeland*, 2014 WL 6892141, at *3); *see, e.g.*, *id.*



26  ("The images and descriptions Plaintiff provides of some of its products are alone insufficient to

27  put Defendant on notice of the asserted trade dress attendant to those products or any others."); *YZ*

28  *Prods*, 2021 WL 263352, at *7; *Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, No. 19-

1    cv-00494, 2019 WL 9050859, at *6 (C.D. Cal. Aug. 5, 2019) (rejecting argument that attaching

2    pictures of the trade dress suffices at the pleading stage); *see also* 1 McCarthy on Trademarks and

3    Unfair Competition § 8:3 (5th ed.) ("It is not sufficient for the plaintiff to simply submit an image

4    of its design and expect the court to determine what part or parts constitute protectable trade

5    dress."). The same result is warranted here. *See Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*,

6    839 F. App'x 95, 98 (9th Cir. 2020) (affirming dismissal of trade dress claim because, *inter alia*,

7    "it is not the district court's job to wade through hundreds of pictures and make factual

8    determinations for each trade dress"); *YZ Prods.*, 2021 WL 2633552, at *8.

9         **2.**    **"The insertion of emoji into messages" is a functional task that cannot**

10               **qualify for trade dress protection.**

11        Because "[t]rade dress protection extends only to design features that are nonfunctional,"

12   *Clicks Billiards*, 251 F.3d at 1258, a party asserting a trade dress claim must "adequately plead

13   non-functionality," *Deckers Outdoor Corp.*, 2015 WL 12731929, at *4. To do so, the plaintiff

14   must allege, in a non-conclusory fashion, "*how* a trade dress is non-functional." *Id.*; *see id.*

15   (collecting cases). Cub Club's own allegations confirm that its trade dress claim must be dismissed

16   on this basis as well.

17        Cub Club alleges its trade dress consists of the function of "the insertion of . . . emoji into

18   messages . . . by selecting from a palette of diverse, five skin tone emoji." (Compl. ¶ 73.) And

19   Cub Club alleges that its trade dress is exemplified by the user interface shown above, through

20   which a user selects and inserts the desired emoji. (*Id.*) But allowing users to insert emoji

21   "select[ed]" from a "palette of diverse emoji . . . on an Apple iPhone" *is* the very function the

22   iDiversicons product provides. (*Id.* ¶¶ 18, 73.) Inserting emoji into text messages is "essential to

23   the use or purpose" of the iDiversicons application and the entire "reason the [product] works."

24   *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32–34 (2001). This is classic

25   functionality that is not protected by trade dress rights.

26

27

28

1    Cub Club's sparse mentions of the word "non-functional" in wholly conclusory allegations

2    are no substitute for factual allegations.  (*See, e.g.*, Compl. Count III ¶ 3, Count IV ¶ 12[5] ("CCI's

3    Trade Dress includes unique, distinctive, and non-functional designs."); *id.* ¶ 17 ("*iDiversicons®*

4    emoji have distinctive and non-functional features").)[6]  Such legal labels do not suffice.  *See*

5    *Deckers Outdoor Corp.*, 2015 WL 12731929, at *4; *see, e.g., DO Denim, LLC v. Fried Denim,*

6    *Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (dismissing trade dress claim where, *inter alia*,

7    the complaint "include[d] a conclusory assertion that the [trade dress is] 'unique and

8    nonfunctional,' but proffer[ed] no factual allegations demonstrating that the design is not

9    aesthetically or otherwise functional").  Nowhere does Cub Club say or define what parts of its

10    purported trade dress are non-functional.  Because the Complaint's only disavowal of functionality

11    occurs in a "conclusory allegation" like the "sculptural configuration and/or other nonfunctional

12    design features[] is a protectable trade dress," Cub Club's federal trade dress claim must be

13    dismissed.  *ID7D Co. v. Sears Holding Corp.*, No. 11-cv-1054, 2012 WL 1247329, at *7 (D. Conn.

14    Apr. 13, 2012); *see also Crafty Prods.*, 839 F. App'x at 98 ("The district court was not required to

15    accept as true Appellants' legal conclusion that the trade dresses were nonfunctional or the

16    additional conclusory statements offered to support nonfunctionality."); *Profade Apparel, LLC v.*

17    *Rd. Runner Sports, Inc.*, No. 18-cv-1254, 2020 WL 5230490, at *5 (S.D. Cal. Sept. 2, 2020)

18    _____

19    [5] The paragraph numbering in the Complaint restarts on page 21 with Count III.  As such, for the
     paragraphs contained in Counts III through V, this motion cites the count number and then the

20    paragraph number.

21    [6] The same paragraphs contain equally conclusory, and thus legally deficient, allegations of
     consumer confusion.  Cub Club appears to believe that consumer confusion could arise because

22    the allegedly infringing product and its product both present users with a keyboard function.  (*See*
     Compl. ¶¶ 18, 46, 73–74).  Cub Club fails to sufficiently plead consumer confusion because,

23    "[w]here . . . the features shared by the conflicting trade dresses are unprotectable because [they
     are] functional, that dictates against a finding of a likelihood of confusion."  1 McCarthy on

24    Trademarks and Unfair Competition § 8:15 (5th ed.); *see also Motorola Inc. v. Qualcomm Inc.*,
     No. 97-cv-615, 1997 WL 838877, at *16 (S.D. Cal. Apr. 24, 1997), *aff'd*, 135 F.3d 776 (Fed. Cir.

25    1998) ("While [defendant's] phone has many of the same features as [plaintiff's phone], many of
     these features are functional and the two phones are sufficiently distinct."); *Kaisha v. Lotte Int'l*

26    *Am. Corp.*, No. 15-cv-5477, 2019 WL 8405592, at *3 (D.N.J. July 31, 2019) ("When a feature or
     combination of features is found to be functional, it may be copied and the imitator may not be

27    enjoined from using it, even if confusion in the marketplace will result."), *aff'd* 986 F.3d 250 (3d
     Cir. 2021), as amended (Mar. 10, 2021) (quoting *Am. Greetings Corp. v. Dan-Dee Imports, Inc.*,

28    807 F.2d 1136, 1141 (3d Cir. 1986)).

1   (dismissing trade dress claim because, *inter alia*, the plaintiff "d[id] not allege any facts to support

2   the non-functionality of its purported trade dress" and instead provided only "a conclusory

3   statement . . . contending that the sock 'contains distinctive elements of non-functional trade

4   dress'").

### 3.   Cub Club has not alleged secondary meaning.

6   Cub Club's trade dress claim fails for a third reason: even if it had identified concrete, non-

7   functional, protectable trade dress, it has not alleged that, "in the minds of the public, the primary

8   significance of [its product's design] is to identify [Cub Club as] the source of the product rather

9   than the product itself," *Wal-Mart*, 529 U.S. at 211. Cub Club does not allege *any* facts to indicate

10  that consumers associate its user interface with the *source* of the iDiversicons application. (*See*

11  Compl. ¶¶ 74–75.) Cub Club instead relies on its conclusory claim that its trade dress "includes

12  unique, distinctive, non-functional designs" that have "acquired substantial secondary meaning."

13  (*Id.* Count III ¶ 3; *see also id.* Count IV ¶ 12; Compl. ¶ 17.) But such "naked assertions regarding

14  distinctiveness and secondary meaning cannot sustain a claim of trade dress infringement."

15  *Kittrich Corp. v. United Indus. Corp.*, No. 17-cv-06211, 2017 WL 10434389, at *6 (C.D. Cal. Oct.

16  18, 2017); *see also, e.g.*, *Green Crush LLC v. Paradise Splash I, Inc.*, No. 17-cv-1856, 2018 WL

17  4940825, at *5 (C.D. Cal. May 3, 2018); *Swift Harvest USA, LLC v. Boley Int'l HK Ltd*, No. 19-

18  cv-1700, 2020 WL 7380148, at *14 (C.D. Cal. Sept. 22, 2020); *Tropic Ocean Airways, Inc. v.

19  Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) ("[C]onclusory allegations about secondary

20  meaning . . . are insufficient to survive a motion to dismiss.").

### C.   Cub Club's state law claims (Counts III, IV, and V) should be dismissed.

22  Cub Club's state law claims[7]—unfair competition, which only can be reasonably construed

23  to mean common law trade dress (Count III), misappropriation (Count IV), and unjust enrichment

24  (Count V)—should be dismissed for three independent reasons. First, all three state law claims

25  are rooted in the same allegations as the federal trade dress claim. (Count III ¶¶ 2–5, Count IV

26  ¶¶ 10–14, Count V ¶¶ 18–20.) They must therefore be dismissed for the same reasons. *See Aurora*

---

[7] Apple asserts that California law controls Cub Club's claims as this case involves a suit against a California company with alleged events occurring in California and emoji designed in California. Cub Club seemingly denies this assertion. *See* Dkt. 26 at 8–9.

1    *World, Inc. v. Ty Inc.*, No. 09-cv-08463, 2011 WL 13176413, at *31 (C.D. Cal. Mar. 14, 2011)

2    ("The legal framework used to analyze [state law claims based on federal claim of trade dress

3    infringement] is substantially the same as the framework used to evaluate Lanham Act claims

4    under federal law."); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This

5    Circuit has consistently held that state common law claims . . .  are 'substantially congruent' to

6    claims made under the Lanham Act.").  Second, to the extent any aspect of Cub Club's state law

7    claims are not coextensive with its trade dress claim, those aspects overlap with Cub Club's claim

8    for federal copyright infringement, and are therefore preempted by the U.S. Copyright Act.  *See,*

9    *e.g.*, *Crafty Prods., Inc.*, 839 F. App'x at 98 (affirming dismissal of state law claims where "the

10   rights asserted under state law are also equivalent to exclusive rights" under the U.S. Copyright

11   Act); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) ("The

12   Copyright Act explicitly preempts state laws that regulate in the area of copyright[.]").  Finally,

13   "when no federal claims remain," the "district court may decline to exercise supplemental

14   jurisdiction over state law claims." *Dickinson v. Ryan Seacrest Enterprises Inc.*, 839 F. App'x

15   110, 112 (9th Cir. 2020) (citing *Lima v. United States Dep't of Educ.*, 947 F.3d 1122, 1128 (9th

16   Cir. 2020)); *see also* 28 U.S.C. § 1367(c).  Once the Court dismisses Cub Club's federal copyright

17   and trade dress claims, the Court should decline to exercise supplemental jurisdiction over the

18   remaining state law claims and dismiss them in tandem.

19   **V.    CONCLUSION**

20         For the foregoing reasons, Apple respectfully requests the Court dismiss Cub Club's

21   Complaint.

22

23

24

25

26

27

28

1

2   Dated:  September 29, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Andrew M. Gass*
     Andrew M. Gass (Bar No. 259694)
     *andrew.gass@lw.com*
     505 Montgomery Street, Suite 2000
     San Francisco, CA 94111-6538
     Telephone: 415.391.0600
     Facsimile: 415.395.8095

     Gabriel S. Gross (Bar No. 254672)
     *gabe.gross@lw.com*
     140 Scott Drive
     Menlo Park, CA 94025
     Telephone: 650.328.4600
     Facsimile: 650.463.2600

     Elana Nightingale Dawson (*pro hac vice*)
     *elana.nightingaledawson@lw.com*
     Carolyn M. Homer (Bar No. 286441)
     *carolyn.homer@lw.com*
     555 Eleventh Street, NW, Suite 1000
     Washington, D.C. 20004-1304
     Telephone: 202.637.2200
     Facsimile: 202.637.2201

     *Attorneys for Defendant Apple Inc.*