Joseph John Stevens (CA Bar No. 242495)
jstevens@pattersonsheridan.com

Patterson + Sheridan, LLP
50 W. San Fernando Street, Suite 250
San Jose, CA 95113
Tel: 650-384-4418
Fax: 650-330-2314

B. Todd Patterson (*pro hac vice*)
tpatterson@pattersonsheridan.com
John A. Yates (*pro hac vice*)
jyates@pattersonsheridan.com
Craig Depew (pro hac vice)
cdepew@pattersonsheridan.com
Kyrie K. Cameron (*pro hac vice*)
kcameron@pattersonsheridan.com
Edgar N. Gonzalez (*pro hac vice*)
egonzalez@pattersonsheridan.com
Joshua H. Park (*pro hac vice*)
jpark@pattersonsheridan.com

Patterson + Sheridan, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas 77030
Tel: 713-623-4844
Fax: 713-623-4846

*Attorneys for Plaintiff Cub Club Investment, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CUB CLUB INVESTMENT, LLC,<br><br>               Plaintiff,<br><br>vs.<br><br>APPLE, INC.,<br><br>               Defendant. | Case No.: Case No. 5:21-cv-06948-LHK<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT APPLE INC.'S RENEWED MOTION TO DISMISS**<br><br>Date:         January 27, 2022<br>Time:        1:30 PM<br>Courtroom:  8 – 4th Floor<br>Judge:      Honorable Lucy H. Koh |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................ 1

II.   STATEMENT OF THE ISSUES ........................................ 2

III.  STATEMENT OF RELEVANT FACTS ........................... 2

IV.   LEGAL STANDARD ....................................................... 4

V.    ARGUMENT ..................................................................... 5

      A.    CCI Has Sufficiently Stated a Claim for Copyright Infringement ...................... 5

            1.    CCI's Complaint Sufficiently Alleges Ownership of its Valid Copyrights ........................... 6

            2.    CCI Has Sufficiently Alleged Copying of the Original and Protected Elements of its Registered Copyrights ..................... 7

      B.    Even Under the "Extrinsic Test," CCI Has Shown Substantial Similarity or Virtual Identity .............. 10

            1.    CCI's Copyrighted Works Are More Than an "Idea" ............. 11

            2.    Apple Has Sought to Copyright These Same Expressions .................... 13

            3.    Apple Inappropriately "Filters Out" Too Many of CCI's Original, Protectable Copyright Elements ............... 13

            4.    The Original Combination of Elements of CCI's Copyrights are Still Entitled to Protection ............... 16

      C.    CCI Has Sufficiently Pled a Claim for Trade Dress Infringement ................. 17

            1.    CCI Has Sufficiently Defined its Trade Dress ........................ 17

            2.    CCI Has Alleged Its Trade Dress is Nonfunctional ................ 19

            3.    CCI Has Alleged Secondary Meaning .................... 21

      D.    CCI's State Law Claims Are Not Preempted ................. 24

      E.    In the Alternative, the Court Should Grant CCI Leave to Amend its Complaint ................ 24

VI.   CONCLUSION .................................................................. 25

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

5

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   890 F.3d 747 (9th Cir. 2018) .................................................................................. 17

6

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ................................................................................. 16

7

*Arcsoft, Inc. v. Cyberlink Corp.*,
   153 F. Supp. 3d 1057 (N.D. Cal. 2015) ............................................................ 17, 18

8

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ............................................................................... 17

9

10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 4, 5

11

12

*Atl. Rec. Corp. v. Serrano*,
   No. 07-CV-1824-W-JMA, 2007 U.S. Dist. LEXIS 95203 (S.D. Cal. Dec. 28,
   2007) ..................................................................................................................... 5

13

14

*Aurora World, Inc. v. TY Inc.*,
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) ................................................................. 21

15

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*,
   No. C 08-04397, 2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18, 2008) ...................... 21

16

17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 545 (2007) ...................................................................................... 4, 5, 10

18

*BLT Rest. Grp., LLC v. Tourondel*,
   No. 10-6488, 2011 U.S. Dist. LEXIS 81348 (S.D.N.Y. July 19, 2011) ............................ 20

19

20

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
   963 F.3d 859, 865 (9th Cir. 2020) ......................................................................... 20

21

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ................................................................................. 14

22

23

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
   870 F.2d 512 (9th Cir. 1989) ................................................................................. 23

24

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ............................................................................... 21

25

26

*Ctr. for Food Safety v. Vilsack*,
   No. 15-CV-01590, 2016 U.S. Dist. LEXIS 121629 (N.D. Cal. Sept. 8, 2016) ...................... 5

27

28

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS                    ii

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
 820 F.2d 973 (9th Cir. 1987) .................................................................. 24

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
 No. CV 15-769 PSG, 2015 U.S. Dist. LEXIS 188274 (C.D. Cal. May 8, 2015) ........... 20, 21

*Disc Golf Ass'n, Inc. v. Champion Discs*,
 158 F.3d 1002 (9th Cir. 1998) ................................................................ 17

*Dream Games of Ariz., Inc. v. PC Onsite*,
 561 F.3d 983 (9th Cir. 2009) .................................................................. 7

*Ets-Hokin v. Skyy Spirits, Inc.*,
 225 F.3d 1068 (9th Cir. 2000) ............................................................ 7, 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ................................................................... 5, 11, 16

*First Brands Corp. v. Fred Meyer, Inc.*,
 809 F.2d 1378 (9th Cir. 1987) ................................................................ 23

*Gilligan v. Jamco Dev. Corp.*,
 108 F.3d 246 (9th Cir. 1997) .................................................................. 5

*Global Manufacturing Grp., LLC v. Gadget Universe.Com*,
 417 F. Supp. 2d 1161 (S.D. Cal. 2006) ....................................................... 21

*Gorski v. Gymboree Corporation*,
 No. 5:14-cv-01314-LHK, 2014 U.S. Dist. LEXIS 97816 (N.D. Cal. July 16,
 2014) ................................................................................. 5, 10, 25

*Hall v. Swift*,
 No. CV 17-6882-MWF, 2020 U.S. Dist. LEXIS 165214 (C.D. Cal. Sept. 2,
 2020) .................................................................................... 13

*Iditasport Alaska v. Merchant*,
 No. 3:18-cv-0068-HRH, 2018 U.S. Dist. LEXIS 156199 (Dist. Alaska Sept.
 13, 2018) ................................................................................ 12

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
 64 F. Supp. 3d 494 (S.D.N.Y. 2014) .......................................................... 20

*Johnson v. Lewis*, No. LA CV17-01877 JAK (Ex), 2018 U.S. Dist. LEXIS
 238312 (C.D. Cal. May 30, 2018) .............................................................. 8

*L.A. Printex Indus. v. Aeropostale, Inc.*,
 676 F.3d 841 (9th Cir. 2012) .................................................................. 6

*Laws v. Sony Music Entm't, Inc.*,
 448 F.3d 1134 (9th Cir. 2006) ................................................................ 24

*Leapers, Inc. v. SMTS, LLC*,
 No. 14-CV-12290, 2014 U.S. Dist. LEXIS 140622 (E.D. Mich. Oct. 3, 2014) ................... 20

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ............................................................ 5, 25

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ................................................................ 4

*Mattel Int'l v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) ................................................................ 15

*Mazer v. Stein*,
   347 U.S. 201 (1954), *superseded by* Copyright Act of 1976 ............................... 11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2004) ................................................................ 5

*Metcalf v. Bocho*,
   294 F.3d 1069 (9th Cir. 2002), *overruled on other grounds by Skidmore v. Led
   Leppelin*, 952 F.3d 1051 (9th Cir. 2020) ....................................... 5, 7, 16

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ................................................................ 7

*Millennium Labs. Inc. v. Ameritox, Ltd.*,
   817 F.3d 1123 (9th Cir. 2015) .............................................................. 17

*Miller v. Glenn Miller Prods.*,
   454 F.3d 975 (9th Cir. 2006) ................................................................ 21

*Morton v. Rank America, Inc.*,
   812 F.Supp. 1062 (C.D. Cal. 1993) ...................................................... 21

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
   No. 20-cv-04556, 2020 U.S. Dist. LEXIS 174997 (C.D. Cal. Sept. 3, 2020) ...................... 19

*PaperCutter, Inc. v. Fay's Drug Co.*,
   900 F.2d 558 (2d Cir. 1990) ................................................................ 22

*Qualitex Co. v Jacobson Prods. Co.*,
   514 U.S. 159 (1995) .......................................................................... 19

*Rassamni v. Fresno Auto Spa, Inc.*,
   365 F. Supp. 3d 1039 (E.D. Cal. 2019) ................................................. 13

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111, 1123 (9th Cir. 2018), *overruled on other grounds by Skidmore
   v. Led Leppelin*, 952 F.3d 1051 (9th Cir. 2020) .......................................... 8

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ................................................................ 16

*Seacalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*,
   668 F.3d 677 (9th Cir. 2012), *abrogated on other grounds by SunEarth, Inc. v.
   Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (en banc) ...................... 19, 20

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS                   iv

*Shaw v. Lindheim,*
   919 F.2d 1353 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Led Leppelin*, 952 F.3d 1051 (9th Cir. 2020) ................................................................. 6

*Solid Host, NL v. Namecheap, Inc.,*
   652 F. Supp. 2d 1092 (C.D. Cal. 2009) ..................................................................... 22

*Spry Fox LLC v. LOLApps Inc.,*
   No. C12-147RAJ, 2012 U.S. Dist. LEXIS 153863 (W.D. Wash. Sept. 18, 2012) .......................................................................................................................... 5

*Streetwise Maps, Inc. v. VanDam, Inc.,*
   159 F.3d 739 (2d. Cir. 1998) ..................................................................................... 15

*U.S. v. Redwood City,*
   640 F.2d 963 (9th Cir. 1981) ....................................................................................... 5

*United Fabrics Int'l, Inc. v. C & J Wear, Inc.,*
   630 F.3d 1255 (9th Cir. 2011) ..................................................................................... 7

*Walls v. Uniradio Corp.,*
   No. 16cv242-WQH-JLB, 2017 U.S. Dist. LEXIS 1035 (S.D. Cal. Jan. 3, 2017) ........................................................................................................................ 10

*Washoutpan.com v. Hd Supply Const. Supply Ltd.,*
   No. 19-cv-00494, 2019 U.S. Dist. LEXIS 231695 (C.D. Cal. Aug. 5, 2019) ..................... 19

**STATUTES**

17 U.S.C. § 102(a) ............................................................................................................. 11

17 U.S.C. § 410(c) ............................................................................................................... 7

**RULES**

Fed. R. Civ. P. 8 (a) ....................................................................................................... 10, 19

Fed. R. Civ. P. 12(b)(6) ............................................................................................. *passim*

Fed. R. Civ. P. 15 (a) ....................................................................................................... 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, Cub Club Investment LLC ("CCI") respectfully submits this Memorandum and Points of Authority in support of its Response in Opposition to Defendant Apple Inc.'s ("Apple") Renewed Motion to Dismiss CCI's Original Complaint.

## I.  INTRODUCTION

Apple's attack on CCI's Complaint is a baseless attempt to prematurely adjudicate the merits of CCI's well-pled claims for copyright infringement, trade dress infringement, and associated trade dress common law claims.  Contrary to Apple's assertions, CCI is not seeking to monopolize "an exclusive right over the general concept and practice of applying different skin tones to emoji." Dkt. 54, p. 9.  Instead, CCI seeks to protect its *creative* expression of *unique* and *distinctive* elements within its *iDiversicons*® application and emoji.  Those distinctive and protectable elements have been blatantly copied by Apple ever since Mrs. Katrina Parrott, the owner and founder of CCI and the *iDiversicons*® application and emoji, met with and showed Apple her *iDiversicons*® emoji in 2014.  The law protects both these individual elements and overall selection and combination of CCI and Mrs. Parrott's *iDiversicons*® emoji against such flagrant misappropriation.  Apple's claim that these are unprotectable ideas is disingenuous as well as cynical, as Apple has sought to copyright these same expressions themselves.

Accordingly, Apple's motion to dismiss CCI's copyright infringement claim must fail because CCI has sufficiently stated its claim for copyright infringement by providing well-supported allegations of CCI's ownership of the asserted registered copyrights, Apple's access to CCI's copyrighted works, and the substantial similarity between CCI's copyrighted works and Apple's "diverse emoji."  Moreover, Apple's Renewed Motion mischaracterizes CCI's protected copyrights as a mere "idea," attempts to improperly filter out protectable elements of CCI's copyrighted works, and, conveniently, and fatally, ignores CCI's Complaint's identification of several protectable features of CCI's *iDiversicons*® emoji that are substantially similar to Apple's "diverse emoji."

Similarly, Apple's motion to dismiss CCI's Lanham Act claim fails because CCI

adequately alleges infringement of its protectable Trade Dress, which includes nonfunctional features that have acquired the requisite secondary meaning in the marketplace.  And finally, Apple's motion as to CCI's common law claims for unfair competition, unjust enrichment, and misappropriation fails because Apple's arguments rely entirely on the notion that the Copyright Act preempts each claim.  However, as set forth below, each of CCI's common law claims survives preemption, and therefore clearly survives Apple's challenge.  Accordingly, Apple's Renewed Motion to Dismiss should be denied in its entirety.

## II.   STATEMENT OF THE ISSUES

1.     Whether CCI sufficiently stated a claim for copyright infringement where its Complaint (1) alleges ownership of the seven copyright registrations asserted by CCI, and (2) includes numerous allegations and comparisons showing the substantial similarity of protectable expressive elements between CCI's copyrights and Apple's emoji.

2.     Whether CCI sufficiently stated a claim for trade dress infringement where it particularly defined and identified its trade dress, and the Complaint, taken as a whole, provides enough factual support to suggest CCI's trade dress has acquired secondary meaning.

3.     Whether CCI's copyright cause of action preempts its common law claims for misappropriation, unjust enrichment, and unfair competition, each of which are premised on a viable trade dress infringement claim and thus not preempted by the Copyright Act.

## III.   STATEMENT OF RELEVANT FACTS

This case is about emoji.  More specifically, this case is about the original, creative expressions developed by CCI and Mrs. Katrina A. Parrott to bring racial diversity into the realm of digital communications, and CCI's Trade Dress that represents the overall look and feel of its *iDiversicons*® application.

Today, emoji have taken on a critical role of in modern digital communications.  Emoji, although typically simple and pictographic in nature, have taken on meanings, representations, and expressions in ways that have reshaped the very way people communicate with and express oneself with one another.  Prior to the development and release of the *iDiversicons*® emoji and application

(and years before the universal adoption of "diverse emoji" standards by the Unicode Consortium), however, emoji were limited in terms of race or color.  Dkt. 1, Compl. ¶ 7.

Spurred by her daughter's thought of having emoji that "looked like the person sending them," Mrs. Katrina A. Parrott started CCI to develop what later came to be known as the *iDiversicons*® emoji and application, which, through its own creative and original expressions, brought racial diversity, and therefore the ability to express oneself more accurately and thoughtfully, to the realm of digital communications.  *Id*.  The *iDiversicons*® emoji were duly registered with the U.S. Copyright Office on July 13, 2013.  *Id*. ¶ 9.

Thereafter, CCI and Mrs. Parrott launched the *iDiversicons*® application on the Apple App Store on October 13, 2013, which allowed users to use *iDiversicons*® emoji in their digital communications.  *Id*. ¶ 8.  Although the *iDiversicons*® application was the first (and only) application that offered diverse emoji to the public in 2013, Mrs. Parrott sought to further influence and expand the representation of minorities in emoji.  Accordingly, Mrs. Parrott joined the Unicode Technical Committee ("UTC") and began attending UTC meetings with the hopes of influencing the UTC to address the issue of diversity in digital communications.  *Id*. ¶ 11.  To such end, Mrs. Parrott submitted technical papers presenting her *iDiversicons*® application and emoji to the UTC committee members, which included representatives of Apple, as a solution to the issue of diversity in digital communications.  *Id*. ¶¶ 11-14.

After a May 2014 UTC meeting, Mrs. Parrott finally met one of Apple's UTC representatives, Senior Software Engineer Peter Edberg.  *Id*. ¶¶ 22.  Over a period of more than five months, Mr. Edberg communicated with Mrs. Parrott regarding the *iDiversicons*® emoji and application (*id*. ¶ 26), coordinated meetings with Ms. Cecil Vigil, Apple's Senior Director for Frameworks and Fonts (*id*. ¶ 27), accessed and downloaded *iDiversicons*® emoji from a thumb drive provided by Mrs. Parrott, which were shared with Mr. Edberg's design team and other Apple employees (*id*. ¶¶ 29, 30, 32, 34, 35), and seemingly emphasized a potential partnership between CCI and Apple (*id*. ¶ 36).  Furthermore, in her attempts to work with Apple on diverse emoji, Mrs. Parrott sent three letters to Apple CEO Tim Cook regarding the issue of diversity and

1   inclusion in emoji and information regarding CCI's *iDiversicons*® emoji and application. *Id.* ¶¶
2   23, 24, 25 (email), 44.

3        However, on October 23, 2014, Mr. Edberg informed Mrs. Parrott that there would be no
4   partnership between CCI and Apple, and that Apple would proceed with developing its own
5   diverse emoji and keyboard.  A few months later, on April 9, 2015, Apple released its first diverse
6   emoji using CCI's five skin tone keyboard modifier pallet. *Id.*  After seeing Apple's release, and
7   the world's celebration, of its first "diverse emoji," Mrs. Parrott was heartbroken.   After
8   developing a relationship with Apple, wherein Apple's representatives seemingly promised or
9   promoted a business relationship between CCI and Apple to acknowledge and promote Mrs.
10  Parrott's development and implementation of "diverse emoji," Apple had moved on.  *Id.* ¶¶ 36,
11  42.  Accordingly, CCI was forced to bring this lawsuit to protect the original, expressive creations
12  and unique, distinctive, and non-functional trade dress developed by CCI and Mrs. Parrott, which
13  were deliberately and intentionally copied by Apple.

14  **IV.    LEGAL STANDARD**

15       To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim for
16  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim
17  is facially plausible when a plaintiff pleads "factual content that allows the court to draw the
18  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,
19  556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but
20  it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In determining
21  plausibility, the court must "accept factual allegations in the complaint as true and construe the
22  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine*
23  *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Determining the facial plauisiblity of a claim is a
24  "context-specific task that requires the reviewing court to draw on its judicial experience and
25  common sense." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 555).  Stated differently,
26  "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal
27  theory or sufficient facts to support a cognizable legal theory." *Ctr. for Food Safety v. Vilsack*,

28

1  15-CV-01590, 2016 U.S. Dist. LEXIS 121629, at *4 (N.D. Cal. Sept. 8, 2016) (quoting *Mendiondo*

2  *v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2004)).

3       Finally, if a court grants a Rule 12(b)(6) motion, leave to amend should be granted unless

4  the pleading cannot possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d

5  1122, 1127 (9th Cir. 2000).

6  **V.     ARGUMENT**

7       Dismissal of a claim under Rule 12(b)(6) is proper only in "extraordinary" cases.  *Atl. Rec.*

8  *Corp. v. Serrano*, No. 07-CV-1824-W-JMA, 2007 U.S. Dist. LEXIS 95203, at *2 (S.D. Cal. Dec.

9  28, 2007) (citing *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)); *Gilligan v. Jamco Dev.*

10  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (motions to dismiss are "viewed with disfavor" and are

11  to be granted rarely).  The court must "assume the truth of all the complaint's factual allegations

12  and credit all reasonable inferences arising from its allegations."  *Spry Fox LLC v. LOLApps Inc.*,

13  No. C12-147RAJ, 2012 U.S. Dist. LEXIS 153863, at *2 (W.D. Wash. Sept. 18, 2012).  When a

14  plaintiff alleges facts sufficient to state a claim, as CCI has done here, "its complaint survives

15  dismissal as long as there is 'any set of facts consistent with the allegations in the complaint' that

16  would entitle the plaintiff to relief."  *Id*. at *2 (quoting *Twombly*, 550 U.S. at 568 and *Iqbal*, 556

17  U.S. at 679).

18       **A.     CCI Has Sufficiently Stated a Claim for Copyright Infringement**

19       "To state a claim for copyright infringement, a plaintiff must allege '(1) ownership of a

20  valid copyright [in a work], and (2) copying of constituent elements of the work that are original.'"

21  *Gorski v. Gymboree Corporation*, No. 5:14-cv-01314-LHK, 2014 U.S. Dist. LEXIS 97816, at *9

22  (N.D. Cal. July 16, 2014) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361

23  (1991)); *Metcalf v. Bocho*, 294 F.3d 1069, 1072 (9th Cir. 2002), *overruled on other grounds by*

24  *Skidmore v. Led Leppelin*, 952 F.3d 1051 (9th Cir. 2020) (relating to the inverse ratio rule).

25  Copying may be established by showing that a defendant had access to the copyrighted work and

26  that there is a substantial similarity between the two works.  *Metcalf*, 294 F.3d at 1072.

27       Here, the question raised by Apple in its Renewed Motion to Dismiss is whether CCI has

28

adequately alleged substantial similarity between the protectable elements of CCI's *iDiversicons®* emoji and Apple's "diverse emoji." However, the Ninth Circuit has warned that a dismissal is "not highly favored on questions of substantial similarity in copyright cases." *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Led Leppelin*, 952 F.3d 1051 (9th Cir. 2020) (relating to the inverse ratio rule). Thus, Apple's Renewed Motion to Dismiss must be denied if CCI's Complaint identifies *any* set of "articulable similarities" between "specific expressive elements" of the copyrighted work and the accused work. *L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012).

On its face, CCI's Complaint readily meets this standard. As discussed further below, CCI's Complaint states (1) that CCI owns seven registered copyrights covering its *iDiversicons®* emoji, (2) that Apple had access to its *iDiversicons®* emoji, and (3) that substantial similarities exist between the protectable, expressive elements of Apple's emoji and CCI's copyrighted works. Such elements include the shape and stylistic renderings of the emoji, the unique and original color selections of the emoji, the specific contours and shading of the emoji, and the arrangement of the emoji with one another. Accordingly, because CCI has sufficiently stated a claim for copyright infringement, Apple's Renewed Motion to Dismiss should be denied.

### 1. CCI's Complaint Sufficiently Alleges Ownership of its Valid Copyrights

As mentioned above, CCI's Complaint sufficiently alleged ownership of United States Copyright Registrations Nos. VAu 001-204-290, VAu 001-186-920, VAu 001-152-200, VUA 001-152-192, VAu 001-180-102, and VAu 001-152-204 (collectively, "CCI's Copyrighted Works"). *See, e.g.*, Dkt. 1, ¶ 9 ("CCI is the sole owner and proprietor of all rights, title, and interest in and to the copyrights in the Works"); ¶ 60 ("CCI owns valid copyrights in the Works at issue in this case"); ¶ 61 ("CCI registered the Works in this case with the U.S. Copyright Office pursuant to 17 U.S.C. § 411(a)"); ¶ 62 ("[t]he U.S. Copyright issued valid Certificates of Registration to CCI for the seven (7) registered Works…"); ¶ 63 ("[t]he Works are original, creative works and copyrightable subject matter under the copyright laws of the United States"); ¶ 64 ("CCI has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and has secured the exclusive rights and

privileges in and to the copyrights in its Works").

The registration of CCI's copyrights, including the seven copyright registrations asserted by CCI in the present case, "raises the presumption of copyright validity and ownership." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987 n.2 (9th Cir. 2009) (citing *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075-76 (9th Cir. 2000); *accord United Fabrics Int'l, Inc. v. C & J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) ("A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'") (quoting 17 U.S.C. § 410(c)).  Accordingly, in the context of a motion to dismiss, this Court need look no further than this presumption of validity and ownership to satisfy the first element of CCI's copyright infringement claim.

### 2. CCI Has Sufficiently Alleged Copying of the Original and Protected Elements of its Registered Copyrights

CCI's Complaint sufficiently alleges that (1) Apple had access to, and copied, the original, protectable combination of elements of CCI's *iDiversicons*® emoji protected by CCI's registered copyrights, and (2) Apple's "diverse emoji" are substantially similar to CCI's Copyrighted Works. Contrary to Apple's assertions, CCI's Copyrighted Works encompass protectable elements, which, in combination, are substantially similar to Apple's "diverse emoji."  As such, Apple's Renewed Motion to Dismiss CCI's Copyright Infringement Claim (Count I) should be denied because CCI has met the pleading standards of Fed. R. Civ. P. 8(a).

*First*, CCI has alleged that Apple copied CCI's Copyrighted Works.  As mentioned, "copying" may be shown by proving access to the copyrighted work and substantial similarity between the works. *Metcalf*, 294 F.3d at 1072.  In its Complaint, CCI alleges that Apple, through its employees Mr. Peter Edberg and Ms. Cecil Vigil, gained direct access to CCI's Copyrighted Works through their repeated encounters and communications with Mrs. Katrina Parrott's CCI's founder and owner.  Indeed, CCI's Complaint clearly and unequivocally identifies the substantial access Apple had to CCI's Copyrighted Works leading up to its release of its "Diverse Emoji" on April 9, 2015.  *See* Dkt. 1, Compl. ¶¶ 11-15 (Mrs. Parrott presenting her *iDiversicons*® emoji to

the Unicode Technical Committee ("UTC"), including at UTC hosted by Apple in Sunnyvale, California); ¶ 20 (Mrs. Parrott and Apple discussing potential business partnership with Apple regarding *iDiversicons®* emoji); ¶ 26 (Peter Edberg, Apple Senior Software Engineer, meets with Mrs. Parrott, and reviews "*iDiversicons®* emoji and *iDiversicons®* website"); ¶ 29 ("On or around May 7, 2014, Mrs. Parrott provided Mr. Edberg a thumb drive with over 100 *iDiversicons®* emoji, which Mr. Edberg uploaded to his laptop computer"); ¶ 30 ("On or around May 7, 2014, Mr. Edberg shared the uploaded emoji from Mrs. Parrott's thumb drive with Ms. [Cecil] Vigil [Apple's Senior Director for Frameworks and Fonts] during a staff meeting"); ¶ 35 ("On May 9, 2014, Ms. Vigil replied to Mrs. Parrott stating, "Thank you for taking the time to meet with me.  I pointed my colleagues at your [*iDiversicons®*] application.  I can also show them the images you shared with Peter [Edberg]").  Accordingly, Apple does not (and cannot) seriously dispute that it had substantial access to CCI's copyrighted *iDiversicons®* emoji, including the assortment of *iDiversicons®* emoji that are protected by the registered copyrights asserted by CCI in this suit.

     *Second*, CCI has sufficiently alleged that CCI's Copyrighted Works and Apple's emoji are substantially similar in their protectable elements.[1]  For instance, CCI's Complaint states, *inter alia*, that "Apple's emoji are the same or at least substantially similar to the copyrighted

---

[1] In the context of a motion to dismiss, CCI contends that it is premature for the Court to engage in a substantive analysis of the individual elements of CCI's Copyrighted Works under the "extrinsic test" for substantial similarity at such an early stage of the proceedings.  CCI notes that courts in this jurisdiction frequently determine the sufficiency of a copyright infringement claim based on sufficient allegations of a registered copyright, copying by the defendant, and the alleged substantial similarity between the registered copyright and the defendant's work alone, without the need to filter out "unprotectable items." *See, e.g., Johnson v. Lewis*, No. LA CV17-01877 JAK (Ex), 2018 U.S. Dist. LEXIS 238312 at *18-19 (C.D. Cal. May 30, 2018) (denying motion to dismiss and refusing to conduct extensive "filtering" of the copyrighted work based only on the plaintiff's first amended complaint); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018) (determining lack of substantial similarity on a motion to dismiss may be inappropriate where discovery is required to disclose the potential "range of creative choices available to plaintiff…in order to determine the breadth of protection available to his work."), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Recognizing that the Court is well-equipped to determine the substantial similarity at a motion to dismiss stage, CCI provides a substantive response to Apple's "extrinsic test" analysis, including how Apple has mischaracterized CCI's copyrights as an "idea" and improperly filtered-out the individual, protectable elements of CCI's Copyrighted Works, below.  *See infra*, Section B.

*iDiversicons®* emoji that Mrs. Parrott shared with members of Apple's team." *Id.* ¶ 51.  To support

its assertions of substantial similarity, CCI included photos (reproduced in part below) showing

the substantial similarity between CCI's Copyrighted Works and Apple's emoji.



*Id.* ¶ 52 (side-by-side photos comparing CCI's Copyrighted Works and Apple's "Thumbs Up,"

"Backhand Index Pointing Up," "Backhand Index Pointing Down," "Backhand Index Pointing

Left," "Backhand Index Pointing Right," "Index Pointing Up," and "Ear" emoji); *id.* ¶ 65

("Defendant has infringed and will continue to infringe CCI's copyrights in and relating to CCI's

*iDiversicons®* emoji by, *inter alia*, copying, distributing and creating derivative works, based on

[CCI's Copyrighted] Works without any authorization or other permission from CCI").

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS          9

Images, such as the images included in CCI's Complaint (reproduced in part above), are sufficient to allege and show substantial similarity between a plaintiff's copyrighted work and a defendant's copied work. *See Walls v. Uniradio Corp.*, No. 16cv242-WQH-JLB, 2017 U.S. Dist. LEXIS 1035, at *7-8 (S.D. Cal. Jan. 3, 2017) (denying motion to dismiss where plaintiff provided a "copy of both the alleged original image and the image allegedly reproduced by [d]efendant"). Furthermore, and importantly, each of the images in CCI's Complaint shows the substantial similarity between CCI's Copyrighted Work and Apple's emoji.

As such, CCI's allegations of substantial similarity, supported by its exemplary images of the Copyrighted Works versus Apple's emoji, are more than sufficient to allege the substantial similarity between CCI's Copyrighted Works and Apple's emoji in Count I of CCI's Complaint. Therefore, CCI's Complaint sets forth sufficient factual matter which, when taken as true, sufficiently shows that (1) it owns the seven Copyrighted Works asserted in this case, and (2) Apple has copied constituent elements of CCI's Copyrighted Works. *Gorski*, 2014 U.S. Dist. LEXIS 97816 at *9. CCI's Complaint therefore sets forth a plausible claim for copyright infringement, which is all that is required under Fed. R. Civ. P. 8(a). *See* Fed. R. Civ. P. 8(a); *accord Twombly*, 550 U.S. at 555 (Rule 8(a) of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests"). Accordingly, given the sufficiency of CCI's Complaint under the relevant pleading standards for a claim of copyright infringement, Apple's Renewed Motion to Dismiss CCI's copyright infringement claim should be denied.

### B. Even Under the "Extrinsic Test," CCI Has Shown Substantial Similarity or Virtual Identity

Under the guise of its own "extrinsic" test for substantial similarity, Apple seeks to prematurely adjudicate the substantive merits of CCI's copyright infringement claim. In doing so, Apple misapplies the extrinsic test for substantial similarity and improperly filters out original, protectable elements entitled to copyright protection. *First*, Apple mischaracterizes CCI's works

as a mere "idea," and asks this Court to prematurely apply the doctrine of merger to CCI's Copyrighted Works without providing any authority to support its proposition. *Second*, Apple improperly filters out individual elements of CCI's registered Copyrighted Works and summarily declares that Apple's stolen emoji are not substantially similar or identical to CCI's Copyrighted Works. *Third*, Apple ignores that CCI's original combination of otherwise unprotectable elements are, nonetheless, still entitled to protection under the Copyright Act. Finally, even assuming that Apple has correctly filtered out "unprotectable" elements of CCI's Copyrighted Works (which it has not), Apple has still failed to show that the works are not virtually identical. As such, Apple's motion to dismiss CCI's copyright infringement claim should be denied.

### 1. CCI's Copyrighted Works Are More Than an "Idea"

In its Renewed Motion, Apple argues that CCI's Copyrighted Works should be afforded no protection because "applying five different skin tones to emoji" is an "idea" that is entitled to no (or very little) rights under the Copyright Act. Dkt. 54, pp. 6-10. Accordingly, without explicitly saying so, Apple asks this Court to apply the "merger" doctrine to bar CCI from seeking any protection over its Copyrighted Works. However, in doing so, Apple entirely mischaracterizes CCI's copyright infringement claim.

The Copyright Act of 1976 protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The essential element to qualify for copyright protection is that the work must be original to the author. *Feist*, 499 U.S. at 345. As the term is used in copyright law, original means "only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id*. Moreover, fundamental to copyright is the notion that "[c]opyright protects a given expression of an idea, not the idea itself." *Mazer v. Stein*, 347 U.S. 201, 218 (1954), *superseded by* Copyright Act of 1976. To protect copyright's distinction between a protectable expression and an unprotectable idea, courts apply the doctrine of merger, which provides little protection to any copyrighted work "if the idea underlying the work can be expressed only in one way." *Ets-Hokin*, 225 F.3d at 1082. Accordingly, if an idea can be expressed "in only one way," it is said

1   that the idea and the expression "merge" and are, accordingly, afforded only "thin" protection in

2   copyright.  *Id*.

3          Notably, the application of the doctrine of merger requires factual inquiries that are not

4   appropriately considered when deciding a Rule 12(b)(6) motion.  *Iditasport Alaska v. Merchant*,

5   No. 3:18-cv-0068-HRH, 2018 U.S. Dist. LEXIS 156199, at *14-15 (Dist. Alaska Sept. 13, 2018).

6          Even if the doctrine of merger were properly considered in the context of a Rule 12(b)(6)

7   motion (which it is not), Apple has failed to show its applicability to the facts at hand.  For instance,

8   rather than providing authority that the "idea" of "applying five different skin tones to emoji" can

9   only be expressed in a single way, Apple cherry-picks individual sentences of CCI's Complaint in

10  an attempt to persuade this Court that CCI's copyright infringement claim only seeks to

11  monopolize the "idea" itself.  Dkt. 54, p. 9.  Nothing could be farther from the truth.  Rather, as

12  clearly laid out by CCI's Complaint, CCI's copyright infringement claim seeks protection of **seven**

13  **of CCI's registered copyrights depicting its *iDiversicons*® emoji**, not any alleged "idea"

14  underlying those original expressions.  *See, e.g.*, Dkt. 1, Compl. ¶ 9 (describing the value and use

15  of CCI's 20 registered copyrights in its *iDiversicons*® application); ¶ 51 ("Apple's emoji are the

16  same or at least substantially similar to the copyrighted *iDiversicons*® emoji that Mrs. Parrott

17  shared with members of Apple's team"); ¶ 52 (highlighting the substantial similarity between

18  Apple's "five skin tone" versions of its emoji compared to CCI's copyrighted *iDiversicons*®

19  emoji); ¶ 56 (alleging Apple's continued infringement "upon CCI's copyrights"); ¶ 65 ("Defendant

20  has infringed and will continue to infringe CCI's copyrights in and relating to CCI's *iDiversicons*®

21  emoji by, *inter alia*, copying, distributing and creating derivative works, based on the Works

22  without any authorization or other permission from CCI").

23         Indeed, while each of the paragraphs of CCI's Complaint generally ***describes*** the contents

24  of CCI's Copyrighted Works as relating to "emoji with five skin tones," Apple cannot use those

25  descriptions to summarily conclude that CCI's copyrights amount to no more than an unprotectable

26  "idea."  Indeed, Courts typically deny motions to dismiss copyright infringement claims on merger

27  grounds where, as here, a defendant's ***conclusions*** that a copyrighted expression can only be

28

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS          12

expressed in a few ways are "unsubstantiated" and "not readily apparent from the [complaint]." *See, e.g.*, *Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1049 (E.D. Cal. 2019); *see also Hall v. Swift*, No. CV 17-6882-MWF, 2020 U.S. Dist. LEXIS 165214, at *8-9 (C.D. Cal. Sept. 2, 2020) (refusing to apply merger  doctrine at a Rule 12(b)(6) stage based on defendant's conclusory and unsubstantiated conclusions).  Accordingly, to the extent the Court applies the "extrinsic" test for substantial similarity, the Court should refuse to filter out any of CCI's protectable copyrighted elements based on Apple's conclusory allegations of the applicability of the merger doctrine.

### 2. Apple Has Sought to Copyright These Same Expressions

Finally, and most notably, Apple itself seemingly admits that the "idea" of "applying five different skin tones to emoji" should be afforded copyright protection through its own copyright registrations.  Indeed, a simple search of Apple's registered copyrights with the United States Copyright Office shows that Apple has obtained copyright registrations for over two-hundred fifty "diverse emoji."  *See* Exhibit A, Copyright Public Catalog Search.  Accordingly, in an attempt to avoid liability for its unlawful conduct regarding its misappropriation and infringement of CCI's Copyrighted Works, Apple disingenuously suggests that CCI's *iDiversicons®* emoji should be afforded no protection despite Apple itself obtaining copyright registrations for its own "diverse emoji."  However, Apple, like CCI in the present case, is (presumptively) entitled to protection of its each of its registered "diverse emoji."  Certainly, Apple would not file over two-hundred fifty copyright registrations if it truly thought that such registrations only amounted to an unprotectable "idea," as it suggests to this Court.  Accordingly, Apple's tactics of this litigation are clear: undermine the intellectual property protections of CCI while reaping the benefits of its own intellectual property practices.  As such, the Court should disregard Apple's argument that CCI's Copyrighted Works are "unprotectable ideas" based on its own copyright practices.

### 3. Apple Inappropriately "Filters Out" Too Many of CCI's Original, Protectable Copyright Elements

Seeking to avoid any determination of whether its emoji are substantially similar to CCI's

Copyrighted Works, as a whole, Apple next seeks to "filter out" several more elements of CCI's copyrighted works that it contends are not entitled to any protection or, alternatively, are only entitled to a lesser, "thin" protection in the context of an infringement analysis. However, as with its analysis of CCI's copyrights under the merger doctrine, Apple improperly over-filters elements out of CCI's copyright that should be afforded protection under the copyright laws.

**Body part Emoji.**  *First*, Apple seeks to filter out any "body part" elements from CCI's Copyrighted Works. However, like the rest of its analysis, Apple goes too far. Contrary to Apple's assertions, CCI does not intend to "monopolize the images of human features used in digital communications." Dkt. 54, Renewed Motion, p. 11. Rather, CCI only seeks to protect CCI's own expression of its "body part" emoji identified in its seven Registered Works. Such expressions, which were identified in CCI's Complaint (*see* Dkt. 1, Compl. ¶¶ 31-32), include the specific stylistic renderings of CCI's *iDiversicons*® emoji, which are original in nature and, thus, are entitled to at least some protection.

**Emoji Colors.**  Next, Apple argues that CCI cannot "claim protection over, and infringement of, the particular colors that it chose." Dkt. 54, p. 12. However, Apple's arguments are contrary to the case law and its own copyright filings.

However, in determining substantial similarity of an art work under the "extrinsic test," courts considered, amongst other things, "the subject matter, shapes, ***colors***, materials, and arrangement of the representations." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) (denying motion for summary judgment partially based on color in plaintiff's *Good Night, Erine* copyright).

Contrary to Apple's arguments, CCI does, in fact, contend that the colors of Apple's emoji are substantially similar to CCI's Copyrighted Works. The colors of CCI's Copyrighted Works, in combination with the other protectable features of its Copyrighted Works, may be fairly considered by the Court in determining substantial similarity. *See Cavalier*, 297 F.3d at 826. As set forth in CCI's Complaint, the images comparing CCI's Copyrighted Works to Apple's emoji show such substantial similarity. *See* Dkt. 1, Compl. ¶¶ 52-53.

1   Moreover, Apple's cases to support its argument that the color selection of CCI's
2   Copyrighted Works are not entitled to protection are easily distinguishable.  For example, Apple
3   relies on *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 748 (2d. Cir. 1998) to support its
4   argument that "mere variations of color" are not protected under copyright.  Dkt. 54, p. 12.
5   However, in each of those cases, the Court indicated that color, in combination with other elements
6   of the copyright, would, in fact be entitled to copyright protection.  *See Streewise*, 159 F.3d at 748
7   ("focusing on the overall manner in which Streewise selected, coordinated, and arranged the
8   expressive elements in its map,, including color, to depict the map's factual content").
9   Accordingly, the Court, as it did in *Streewise* should focus on the "overall manner" of CCI's
10   Copyrighted Works, including the way that CCI has "selected, coordinated, and arranged" the
11   expressive elements of its works.  These expressive elements undoubtedly include the colors
12   selected for each copyrighted *iDiversicons*® emoji.  Apple cannot avoid such determination by
13   merely claiming that such colors appear in the real world.

14   Furthermore, the analysis conducted in *Mattel Int'l v. MGA Entm't, Inc.*, 616 F.3d 904 (9th
15   Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) which Apple relies upon here, is
16   inapposite here.  The *Mattel* decision involved the Ninth Circuit's review of a jury's finding of
17   substantial similarity.  *Id*. at 911.  Accordingly, such a similarity analysis, which is a question of
18   fact and, nonetheless, does not support the entire exclusion of the selected "colors" of CCI's
19   copyrights, would be inappropriate here at such an early stage in the proceedings.

20   As mentioned above, Apple's own copyright registrations clearly indicate that Apple itself
21   recognizes the importance of protecting its "diverse emoji," including the "particular colors that it
22   chose" for each of its "diverse emoji."  For instance, Apple has registered over two hundred fifty
23   copyrights covering its "diverse emoji."  *See* Exhibit A.  Notably, these registrations include
24   Apple's registration of the diversity versions of its "Left-Facing Fist" (VA0002071793) (published
25   in December 12, 2016).

26

27

28

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS          15

1

2

### 4.   The Original Combination of Elements of CCI's Copyrights are Still Entitled to Protection

Finally, Apple's Renewed Motion entirely ignores the notion that, even if individual elements of CCI's Copyrighted Works are "unprotectable" or "only entitled to a 'thin' protection," CCI's Copyrighted Works may, nonetheless, be entitled to full copyright protection because the combination of those elements itself is sufficiently original to merit protection. *Feist*, 499 U.S. at 358 ("the selection, coordination and arrangement [of otherwise unprotectable elements of a copyright] are sufficiently original to merit protection").

For example, to support its "filtering out" the protectable elements of CCI's Copyrighted Works, Apple heavily relies on *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003). However, Apple entirely ignores the fact that *Satava* stands for the proposition that a combination of otherwise unprotectable elements "is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811 (citing *Metcalf*, 294 F.3d at 1074; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); and *Feist*, 499 U.S. at 358 ("the principal focus should be on whether the selection coordinate, and arrangement are sufficiently original to merit protection")).

Accordingly, to the extent the Court agrees with Apple's "filtering" of the individual elements of CCI's Copyrighted Works, CCI contends that those elements, including the "idea" of application of five different "skin tones" to emoji, the specific human feature color variations, the number of tones chosen (5), and the reflection of human body parts in various natural shapes are numerous enough and original enough in their combination to constitute an original work of authorship. As such, CCI's Copyrighted Works would be entitled to full copyright protection because they each represent an original, protectable combination of expressive elements. Accordingly, as set forth above, CCI's Complaint sufficiently pleads and, in fact, clearly shows the substantial similarity between Apple's emoji and CCI's Copyrighted Works. *See* Dkt. 1, Compl. ¶¶ 52-53. Such comparisons more than adequately provide the basis for this Court to determine that, under the extrinsic test, Apple's emoji are, on their face, substantially similarly to

1  CCI's Copyrighted Works.  Accordingly, because CCI has plausibly alleged all requisite elements

2  for copyright infringement the Court should deny Apple's motion as it pertains to CCI's copyright

3  infringement claim.

4  **C.      CCI Has Sufficiently Pled a Claim for Trade Dress Infringement**

5  The Lanham Act "provides protection for a trade dress, which is the total image of a

6  product, including features such as size, shape, color, texture, and graphics." *Millennium Labs.*

7  *Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2015) (citations and internal quotation marks

8  omitted).  "To prove infringement of an unregistered trade dress, 'a plaintiff must demonstrate that

9  (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and

10  (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products.'"

11  *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018) (quoting *Art Attacks*

12  *Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *Disc Golf Ass'n, Inc. v.*

13  *Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998)).  Additionally, a plaintiff seeking to assert

14  unregistered trade dress must clearly articulate the elements of its alleged trade dress.  *Arcsoft, Inc.*

15  *v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1069 (N.D. Cal. 2015).

16  Apple seeks to distract the Court from CCI's sufficiently defined and well-pled claim for

17  trade dress infringement by suggesting that CCI has (1) failed to articulate the elements of its trade

18  dress; (2) claims functional trade dress; and (3) has not alleged secondary meaning.  However, as

19  will be shown below, CCI has sufficiently and plausibly pled all the requisite elements of a trade

20  dress infringement claim.  Namely, CCI has defined its trade dress to the degree recognized and

21  accepted by this Court, which clearly includes non-functional elements.  Moreover, Apple's

22  arguments ignore the numerous facts in CCI's Complaint that, when taken as true, are more than

23  sufficient to support a plausible case for the acquired secondary meaning of CCI's Trade Dress.

24  Apple's motion to dismiss as it relates to CCI's trade dress infringement claim should be denied.

25  **1.   CCI Has Sufficiently Defined its Trade Dress**

26  Here, CCI has sufficiently pled a plausible claim for trade dress infringement of the

27  "overall look and feel of [its] products, including: the insertion of an emoji into messages (text

28

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS          17

1    messages, e-mails, communication app messages, social media apps, and other forms of content
2    generated by mobile device users) on mobile devices by selecting from a palette of diverse, five
3    skin tone emoji, comprising one of African-American tone, Asian tone, Latino/Hispanic tone,
4    Indian tone, and Caucasian tone."  Dkt. 1, Compl. ¶ 73.  As defined in its Complaint, CCI has
5    adequately alleged the "concrete elements" of its Trade Dress.  *See Arcsoft*, 153 F. Supp. At 1069.
6    Further, to aid the Court in its definition of its Trade Dress, CCI attached an exemplary photograph
7    to help Apple, and the Court, see the "overall look and feel" of its trade dress in its Complaint.



19   Dkt. 1, Compl. ¶ 73.

20         In its Renewed Motion, Apple wholeheartedly ignores CCI's clear articulation of the
21   "concrete elements" of its Trade Dress, and instead complains that the "exemplary" photograph of
22   CCI's trade dress is not, alone, sufficient to articulate its protected trade dress.  However, Apple's
23   arguments ignore that CCI has recited that the "overall look and feel" of its Trade Dress **includes**
24   "the insertion of an emoji into messages (text messages, e-mails, communication app messages,
25   social media apps, and other forms of content generated by mobile device users) on mobile devices
26   by selecting from a palette of diverse, five skin tone emoji, comprising one of African-American
27   tone, Asian tone, Latino/Hispanic tone, Indian tone, and Caucasian tone."  Dkt. 1, Compl. ¶ 73.

28

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS            18

Moreover, Apple's cited cases are inapposite here, as they each involve situations where a plaintiff attached images of its purported trade dress. *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 20-cv-04556, 2020 U.S. Dist. LEXIS 174997, at *13 (C.D. Cal. Sept. 3, 2020) (plaintiff only referenced its "'original designs and products,' 'including the [six] designs and products depicted' in images attached to" plaintiff's first amended complaint); *Washoutpan.com v. Hd Supply Const. Supply Ltd.*, No. 19-cv-00494, 2019 U.S. Dist. LEXIS 231695, at *14 (C.D. Cal. Aug. 5, 2019) (plaintiff's First Amended Complaint only alleged that trade dress was based on "the overall appearance" of its products and argued that images of its registered copyrights were enough to show the particular elements of its trade dress).

Here, CCI has done more.  CCI has clearly defined the "concrete elements" of its Trade Dress, which are bolstered by the exemplary image of the "overall look and feel" of its Trade Dress, to a level sufficient to put Apple, and the Court, on notice of which elements CCI seeks to protect in this lawsuit, which is all that is required of CCI under Fed. R. Civ. P. 8(a).

### 2.  CCI Has Alleged Its Trade Dress is Nonfunctional

Additionally, Apple's motion must fail, as CCI has sufficiently pled that its trade dress is nonfunctional, and the determination of non-functionality of CCI's Trade Dress is a question of fact inappropriately considered in a motion to dismiss. *See Seacalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (en banc).

Trade dress is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995).  Additionally, "a plaintiff may define its claimed trade dress as the 'overall appearance' of its product." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020).  Accordingly, even where trade dress has individual components that are functional, the "overall appearance" may, nonetheless, be nonfunctional. *Id.* at 868 (rejecting argument that utilitarian functionality of components of plaintiff's product rendered the "overall

1  appearance" of the trade dress functional as a matter of law).  While the plaintiff bears the burden

2  to eventually prove non-functionality, the "functionality analysis…is a question of fact."  *Seacalt*,

3  668 F.3d at 683.

4      CCI's allegations of nonfunctionality are sufficient at this stage of the proceedings.  In its

5  Complaint, CCI repeatedly describes that the features of its Trade Dress of its *iDiversicons®*

6  application are "nonfunctional."  *See* Dkt. 1, Compl. ¶ 12 ("CCI's Trade Dress is entitled to protect

7  under the common law.  CCI's Trade Dress includes unique, distinctive, and non-functional

8  designs"); ¶ 17 ("The designs of *iDiversicons®* emoji have distinctive and non-functional features

9  that identify to consumers that the origin of the *iDiversicons®* emoji is CCI"); *see also* ¶ 3 (Count

10  III) ("CCI's Trade Dress is entitled to protect under the common law.  CCI's Trade Dress includes

11  unique, distinctive, and non-functional designs").  Contrary to Apple's assertions, these simple,

12  concise allegations of nonfunctionality, are sufficient at this stage of the case.  *See, e.g.*, *Int'l*

13  *Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 522 n.188 (S.D.N.Y.

14  2014) (denying motion to dismiss because allegations stating the trade dress was "unique" and

15  "associated" with the Plaintiff were sufficient to plead non-functionality); *BLT Rest. Grp., LLC v.*

16  *Tourondel*, No. 10-6488, 2011 U.S. Dist. LEXIS 81348, at *11 (S.D.N.Y. July 19, 2011) (holding

17  that plaintiff had "properly pleaded" that its trade dress was not functional when alleging that trade

18  dress was "unique," as well as "associated…with" and "indicative of" plaintiff); *Leapers, Inc. v.*

19  *SMTS, LLC*, No. 14-CV-12290, 2014 U.S. Dist. LEXIS 140622, at *7-8 (E.D. Mich. Oct. 3, 2014)

20  (denying dismissal when plaintiff alleged "distinctive" design and provided photos of trade dress

21  because "a simple, and illustrated assertion of non-functionality" is sufficient).

22      Apple's reliance on *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769

23  PSG, 2015 U.S. Dist. LEXIS 188274, at *12-13 (C.D. Cal. May 8, 2015) and its other cited cases

24  to suggest that CCI must plead ***how*** its Trade Dress is nonfunctional is, at best, an attempt to

25  require a heightened pleading standard for nonfunctionality.  Moreover, *Deckers Outdoor*

26  acknowledges that "functionality is a question of fact, not of law, that is generally not suitable to

27  disposition on a motion to dismiss."  *Id*. at *13-14 (citing *Morton v. Rank America, Inc.*, 812

28

CUB CLUB INVESTMENT, LLC'S RESPONSE
IN OPPOSITION TO APPLE INC.'S
RENEWED MOTION TO DISMISS          20

1   F.Supp. 1062, 1069 (C.D. Cal. 1993); *Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*, No.

2   C 08-04397, 2008 U.S. Dist. LEXIS 109800, at *2 (N.D. Cal. Dec. 18, 2008)).   Accordingly,

3   Apple's motion to dismiss should be denied because CCI has sufficiently alleged that its Trade

4   Dress is nonfunctional and any substantive determination whether CCI's Trade Dress, as defined

5   in its Complaint, is nonfunctional would be improper at this stage of the proceedings.

6          Finally, Apple improperly hones on individual words in CCI's Complaint to suggest that

7   CCI intends for its Trade Dress to only cover the "insertion" or "selection" of diverse emoji from

8   a palette.   Apple, however, misses the mark and conflates function with overall appearance.

9   Rather, CCI's Trade Dress covers the "overall look and feel" of the *display* of emoji in a singular,

10  horizontal line, as shown in its *iDiversicons*® application and iPhone keyboard.   The mere fact

11  that a user may "select" an emoji from an onscreen display is a fact beyond the scope of CCI's

12  trade dress infringement claim, and irrelevant to whether CCI's Trade Dress non-functional.

13  Nonetheless, CCI is prepared to show the precise reasons of the non-functionality of its Trade

14  Dress at the appropriate time.   That time, however, is not now in the context of a motion to dismiss.

15          **3.   CCI Has Alleged Secondary Meaning**

16          When asserting federal trade dress protection, a plaintiff must show "acquired" or

17  "secondary" meaning for its product design.   *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115,

18  1150 (C.D. Cal. 2009) (citing *Global Manufacturing Grp., LLC v. Gadget Universe.Com*, 417 F.

19  Supp. 2d 1161, 1164 (S.D. Cal. 2006)).   Trade dress acquires secondary meaning when consumers

20  associate the dress with a particular source, *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d

21  1252, 1262 (9th Cir. 2001), and is a way of describing the distinctiveness of the appearance of the

22  product.   *Aurora World*, 719 F. Supp. 2d at 1151.   "Whether a claimed mark has obtained

23  secondary meaning is a question of fact to be determined by a jury." *Miller v. Glenn Miller Prods.*,

24  454 F.3d 975, 991 (9th Cir. 2006).

25          CCI is not required to produce every piece of evidence to support its allegations that its

26  trade dress has acquired secondary meaning in order to survive a motion to dismiss. *Solid Host,*

27  *NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1108 (C.D. Cal. 2009).   The existence of secondary

28

1   meaning "may be 'inferred from evidence relating to the nature and extent of the public exposure

2   achieved by the designation,' or from proof of intentional copying." *See PaperCutter, Inc. v. Fay's*

3   *Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990).

4       *First*, CCI's Complaint more than adequately alleges Apple's intentional copying of CCI's

5   Trade Dress.  *See* Dkt. 1, Compl. ¶ 21 (alleging Apple's participation in the same UTC meetings

6   in 2013, 2014, and 2015 as Mrs. Parrott); ¶ 26 ("During UTC Meeting 139, Mrs. Parrott met

7   Mr. Edberg, and Mr. Edberg reviewed *iDiversicons*® emoji and the *iDiversicons*® website."); ¶

8   27 ("On or around May 7, 2014, Mr. Edberg helped coordinate a meeting between Mrs. Parrott

9   and Celia Vigil, Apple's Senior Director for Frameworks and Fonts at the time"); ¶ 29 ("On or

10  around May 7, 2014, Mrs. Parrott provided Mr. Edberg a thumb drive with over 100 *iDiversicons*®

11  emoji, which Mr. Edberg uploaded to his laptop computer"); ¶ 35 ("On May 9, 2014, Ms. Vigil

12  replied to Mrs. Parrott stating, "Thank you for taking the time to meet with me.  I pointed my

13  colleagues at your [*iDiversicons*®] application.  I can also show them the images you shared with

14  Peter"); ¶ 40 ("On September 26, 2014, Mr. Edberg emailed Mrs. Parrott about his successful

15  testing of *iDiversicons*® emoji on the Apple OSX operating system and implementation

16  instructions").

17      Moreover, the Court could easily presume secondary meaning based on Apple's copying

18  of CCI's Trade Dress.  As provided in the Complaint, CCI provided Apple with direct access to

19  its Trade Dress during the series of UTC meetings attended by Mrs. Parrott and Apple's

20  employees.  After developing a relationship with Mrs. Parrott, who Apple itself undoubtedly

21  recognized as the creator of the *iDiversicons*® emoji and application, Apple intentionally adopted

22  the overall look and feel of the CCI Trade Dress for its own use.  Instead of choosing to develop

23  its own Trade Dress, Apple relied on the creations of Mrs. Parrott and deliberately chose the exact

24  "look and feel" of CCI's Trade Dress for its own competing application.  Such facts, as illustrated

25  by CCI's Complaint, are more than sufficient to presume that Apple itself recognized the

26  secondary meaning of CCI's Trade Dress at the time of its misappropriation.  In this context,

27  secondary meaning must be evaluated at the time of Apple's misappropriation.  Apple cannot use

28

1   its insider knowledge of its App Store, its near, if not actual monopoly of the space, and its

2   domination of the market to squash an app virtually out of existence, and then use that as a sword

3   to contend that the app never gained recognition in the market.  CCI has pled, and will show,

4   legally sufficient secondary meaning in this matter.  CCI should not be required to do so now.

5         Regardless, CCI's Complaint states sufficient factual matter that, taken as true, shows that

6   consumers associate the protected Trade Dress of the *iDiversicons*® application with CCI.  For

7   instance, CCI's Complaint thoroughly discusses the great accolades and recognition that Mrs.

8   Parrott has received for her creation of CCI's Trade Dress.  *See* Dkt. 1, Compl. ¶ 7 (Mrs. Parrott

9   launched the *iDiversicons*® brand and application on the Apple App Store on October 11, 2013);

10  ¶ 15 ("CCI has sold its emoji app throughout the United States, including to customers in the State

11  of Texas" and "has invested significant resources in the design, development, distribution,

12  advertising, and marketing of *iDiversicons*® emoji"); ¶ 16 (discussing Mrs. Parrott's extensive

13  media recognitions in diversity and inclusion for her development of the *iDiversicons*®

14  application); ¶ 45 ("On March 5, 2015, the *iDiversicons*® emoji app was a "featured" app on the

15  Apple App Store").  Where, as here, a plaintiff alleges facts and supporting evidence of use and

16  advertising of a substantial period of time, the Court can properly infer secondary meaning of a

17  plaintiff's Trade Dress.  *See Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989)

18  ("Evidence of use and advertising over a substantial period of time is enough to establish secondary

19  meaning") (citing *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987)).

20  Accordingly, because CCI's Complaint sufficiently describes the use and advertising of CCI's

21  Trade Dress within its *iDiversicons*® emoji app since 2013, the Court can properly infer secondary

22  meaning of CCI's Trade Dress.

23        For at least these reasons, the Court should deny Apple's motion as it pertains to CCI's

24  trade dress infringement claim because CCI has sufficiently defined its Trade Dress, adequately

25  alleged nonfunctionality, and provided ample evidence for this Court to infer the secondary

26  meaning of its Trade Dress.

27

28

**D.      CCI's State Law Claims Are Not Preempted**

"To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights.  The state claim must have an extra element which changes the nature of the action." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006) (*citing Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987)).  Here, the question is whether CCI's state common law unfair competition, common law misappropriation, and unfair enrichment survives preemption.  The answer is an unequivocal yes.

*First*, each of CCI's common law claims is rooted in CCI's Trade Dress.  Accordingly, for the same reasons discussed above with regard to CCI's trade dress infringement claim, the Court should deny Apple's motion to the extent it seeks dismissal of the common law claims for the same reasons.

*Second*, each of CCI's state law claims for unfair competition, misappropriation, and unjust enrichment are predicated on CCI's trade dress claim, which, as mentioned above, relates to the "overall look and feel of [its] products, including: the insertion of an emoji into messages (text messages, e-mails, communication app messages, social media apps, and other forms of content generated by mobile device users) on mobile devices by selecting from a palette of diverse, five skin tone emoji, comprising one of African-American tone, Asian tone, Latino/Hispanic tone, Indian tone, and Caucasian tone."  Accordingly, because there is no "aspect of [CCI's] state law claims" that "overlap" with CCI's copyright infringement claim, there can be no preemption.  *See Laws*, 448 F.3d at 1143.

Accordingly, Apple has failed to show why CCI's state law claims should be dismissed, and its motion should be denied.

**E.      In the Alternative, the Court Should Grant CCI Leave to Amend its Complaint**

"[L]eave to amend should be freely granted 'when justice so requires.'"  *Lopez*, 203 F.3d at 1127 (quoting Fed. R. Civ. P. 15(a)).  In this instance, the semantics of CCI's allegations as pled, if necessary, may be easily clarified through an amended complaint.  Accordingly, in the event this Court finds deficiencies in CCI's Complaint, CCI respectfully requests leave to amend.

*See, e.g.*, *Gorski*, 2014 U.S. Dist. LEXIS 97816 at *16 (permitting plaintiff leave to amend her first complaint where the Court did not find "repeated failure to cure deficiencies, bad faith, or any undue prejudice" to the Defendant).

## VI.     CONCLUSION

For the foregoing reasons, Apple's motion should be denied.  Alternatively, in the unlikely event the Court finds that any of CCI's claims are insufficiently pled, it should provide CCI leave to amend its allegations.

DATED: October 13, 2021                                    Respectfully submitted,

                                                           By: /s/ Joseph John Stevens__
                                                           Joseph John Stevens (CA Bar No. 242495)
                                                           jstevens@pattersonsheridan.com

                                                           PATTERSON + SHERIDAN LLP
                                                           50 W. San Fernando Street, Suite 250
                                                           San Jose, CA 95113
                                                           Tel: 650-384-4418
                                                           Fax: 650-330-2314

                                                           B. Todd Patterson (*pro hac vice*)
                                                           tpatterson@pattersonsheridan.com
                                                           John A. Yates (*pro hac vice*)
                                                           jyates@pattersonsheridan.com
                                                           Craig Depew (*pro hac vice*)
                                                           cdepew@pattersonsheridan.com
                                                           Kyrie K. Cameron (*pro hac vice*)
                                                           kcameron@pattersonsheridan.com
                                                           Edgar N. Gonzalez (*pro hac vice*)
                                                           egonzalez@pattersonsheridan.com
                                                           Joshua H. Park (*pro hac vice*)
                                                           jpark@pattersonsheridan.com

                                                           PATTERSON + SHERIDAN, LLP
                                                           24 Greenway Plaza, Suite 1600
                                                           Houston, Texas 77030
                                                           713-623-4844 | 713-623-4846

                                                           *Attorneys for Plaintiff Cub Club Investment, LLC*