LATHAM & WATKINS LLP
  Andrew M. Gass (Bar No. 259694)
  andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095

  Gabriel S. Gross (Bar No. 254672)
  gabe.gross@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone:  650.328.4600
Facsimile:  650.463.2600

  Elana Nightingale Dawson (*pro hac vice*)
  elana.nightingaledawson@lw.com
  Carolyn M. Homer (Bar No. 286441)
  carolyn.homer@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone:  202.637.2200
Facsimile:  202.637.2201

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CUB CLUB INVESTMENT, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | CASE NO. 5:21-cv-06948-LHK<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS**<br><br>Hearing Date:  January 27, 2022<br>Time:  1:30 p.m.<br>Place:  Courtroom 8 – 4th Floor<br>Judge:  Hon. Lucy H. Koh |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................. 1

    A.  Cub Club has failed to state a claim for copyright infringement (Count I). ...................................................................................................... 1

        1.  Resolving a motion to dismiss requires applying the "extrinsic test" to filter out unprotectable elements of the works in suit. ............................................................................................... 2

        2.  Cub Club has not alleged a protectable combination of elements. .................................................................................................. 9

    B.  Cub Club has failed to state a claim for trade dress infringement (Count II). .................................................................................................... 10

        1.  The Complaint does not contain a complete recitation of the concrete elements of Cub Club's asserted trade dress. ..................... 10

        2.  Cub Club's claimed trade dress is functional. ......................................... 11

        3.  Cub Club has not identified any allegations in its Complaint that plausibly establish secondary meaning. ........................... 13

    C.  Cub Club's state law claims (Counts III, IV, V) should be dismissed. .................................................................................................. 15

III. CONCLUSION ......................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)............................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................1, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................1

*Blehm v. Jacobs*,
   702 F.3d 1193 (10th Cir. 2012) ...........................................................................5, 6, 10

*BLT Restaurant Group LLC v. Tourondel*,
   No. 10-cv-06488, 2011 WL 3251536 (S.D.N.Y. July 19, 2011)...........................................11

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010) .............................................................10, 15

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .......................................................................................8

*Cont'l Lab'y Prods., Inc. v. Medax Int'l, Inc.*,
   114 F. Supp. 2d 992 (S.D. Cal. 2000).........................................................................14

*Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*,
   839 F. App'x 95 (9th Cir. 2020) ..................................................................................11

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) .....................................................................................4

*Frison v. Accredited Home Lenders, Inc.*,
   No. 10-cv-777, 2011 WL 2729241 (S.D. Cal. July 13, 2011) ...............................................12

*Green Crush LLC v. Paradise Splash I, Inc.*,
   No. 17-cv-01856, 2018 WL 4940825 (C.D. Cal. May 3, 2018)...........................................15

*International Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
   64 F. Supp. 3d 494 (S.D.N.Y. 2014)......................................................................11, 12

*Jeffrey v. Foster Wheeler LLC*,
   No. 14-cv-05585, 2015 WL 1004687 (N.D. Cal. Mar. 2, 2015) ..........................................1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

*Johnson v. Lewis*,
    No. 17-cv-01877, 2018 WL 4998278 (C.D. Cal. May 30, 2018).............................................4

*Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*,
    No. 19-cv-07652, 2019 WL 8064073 (C.D. Cal. Dec. 4, 2019).............................................13

*Kittrich Corp. v. United Indus. Corp.*,
    No. 17-cv-06211, 2017 WL 10434389 (C.D. Cal. Oct. 18, 2017) ........................................14

*Leapers, Inc. v. SMTC, LLC*,
    No. 14-cv-12290, 2014 WL 4964376 (E.D. Mich., Oct. 3, 2014).........................................12

*Lima v. U.S. Dep't of Educ.*,
    947 F.3d 1122 (9th Cir. 2020) ............................................................................................15

*Masterson v. Walt Disney Co.*,
    821 F. App'x 779 (9th Cir. 2020) .........................................................................................3

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) .............. *passim*

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ..................................................................................................1

*Profade Apparel, LLC v. Road Runner Sports, Inc.*,
    No. 18-cv-1254, 2020 WL 5230490 (S.D. Cal. Sept. 2, 2020).............................................13

*Rachel v. Banana Republic, Inc.*,
    831 F.2d 1503 (9th Cir. 1987) .............................................................................................5

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013) ...............................................................................15

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by*
    *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc)................................2, 4, 8

*Rentmeester v. Nike, Inc.*,
    No. 15-cv-00113, 2015 WL 3766546 (D. Or. June 15, 2015),
    *aff'd*, 883 F.3d 1111 (9th Cir. 2018)......................................................................................1

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ............................................................................................3, 9

*Secalt S.A. v. Wuxi Shenxi Construction Machinery Co.*,
    668 F.3d 677 (9th Cir. 2012),
    *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) (en banc) (per curiam)..........................................................13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

*Streetwise Maps, Inc. v. VanDam, Inc.*,
   159 F.3d 739 (2d Cir. 1998).................................................................................................8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001).........................................................................................................12

*Virgin Scent, Inc. v. Bel Air Nats. Care Corp.*,
   No. 17-cv-08284, 2018 WL 5264145 (C.D. Cal. Feb. 8, 2018) ............................................13

*Walls v. Uniradio Corp.*,
   No. 16-cv-242, 2017 WL 35573 (S.D. Cal. Jan. 3, 2017) ......................................................4

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ...........................................................................................12

*YZ Prods., Inc. v. Redbubble, Inc.*,
   No. 20-cv-06615, __ F. Supp. 3d __,
   2021 WL 2633552 (N.D. Cal. June 24, 2021) ...........................................................1, 10, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

## I. INTRODUCTION

On a motion to dismiss a copyright infringement claim, courts in this Circuit are required to consider whether the plaintiff has alleged that the defendant copied elements of the works at issue that copyright law actually protects. Cub Club still has not identified any protectable elements of its works that Apple has allegedly copied. That failure is fatal to its claim for copyright infringement. Cub Club's trade dress infringement claim is similarly deficient as it rests on conclusory allegations that lack the factual basis to survive a Rule 12 motion. And because Cub Club concedes its state law claims are all "rooted in" its trade dress infringement claim, they, too, must be dismissed.

## II. ARGUMENT

"Dismissal of a complaint under Rule 12(b)(6) is appropriate when the complaint fails to state sufficient facts creating a plausible claim to relief." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021). Such relief is not, as Cub Club contends (Dkt. No. 56 at 5), warranted only in "extraordinary" cases. To the contrary, it is required as a matter of law whenever a claim is predicated on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[1] Courts thus regularly dismiss both copyright and trade dress claims at the pleading stage where, as here, the plaintiff failed to state a plausible claim to relief. *See, e.g.*, *Rentmeester v. Nike, Inc.*, No. 15-cv-00113, 2015 WL 3766546, at *7 (D. Or. June 15, 2015), *aff'd*, 883 F.3d 1111 (9th Cir. 2018) (dismissing copyright claim); *YZ Prods., Inc. v. Redbubble, Inc.*, No. 20-cv-06615, __ F. Supp. 3d __, 2021 WL 2633552, at *8 (N.D. Cal. June 24, 2021) (dismissing trade dress claim); *id.* at *7–8 (collecting cases).

### A. Cub Club has failed to state a claim for copyright infringement (Count I).

Apple did not move to dismiss Cub Club's copyright claim based on a failure to allege ownership of copyrights or a theory by which Apple had access to them. Cub Club therefore spends much of its opposition addressing arguments Apple has not advanced. Instead, Apple

---

[1] The cases Cub Club cites to argue otherwise were decided before *Iqbal* and/or *Twombly* and, as a result, no longer control. *See, e.g.*, *Jeffrey v. Foster Wheeler LLC*, No. 14-cv-05585, 2015 WL 1004687, at *1 n.2 (N.D. Cal. Mar. 2, 2015) ("*Gilligan* was decided years before *Iqbal* and *Twombly* and does not control over the pleading standards articulated in those cases.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

moved to dismiss the copyright claim on the basis of Cub Club's failure to allege the requisite substantial similarity between any *protected element* of Cub Club's emoji and the allegedly infringing Apple emoji. *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) (a plaintiff must plausibly allege facts showing "similarities between the two works" that are "substantial" and, most relevant here, that "involve protected elements of the plaintiff's work"). Cub Club fails to identify any basis to reject Apple's argument. Apple's motion to dismiss Cub Club's copyright claim should be granted.

### 1. Resolving a motion to dismiss requires applying the "extrinsic test" to filter out unprotectable elements of the works in suit.

To determine whether a plaintiff has sufficiently alleged substantial similarity at the pleading stage, courts apply the "extrinsic test" to "assess[] the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.* at 1118. "Before that comparison can be made," however, "the court *must* 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.*[2] Such filtering is necessary because, "[w]hen works of art share an idea, they'll often be 'similar' in the layman's sense of the term." *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010). "The key question always is: Are the works substantially similar *beyond* the fact that they depict the same idea?" *Id.* at 917.

Cub Club's brief asserts in some places that it is "premature" for the Court to apply the "extrinsic test" at the pleading stage. (*See* Dkt. No. 56 at 8 n.1.) This is wrong. As Cub Club elsewhere agrees (as it must), even on a motion to dismiss, the Court should consider only the "protectable copyrighted elements" of Cub Club's emoji in determining whether Cub Club has stated a claim upon which relief can be granted. (*Id.* at 13.) The only way for the Court to do so, however, is by applying the extrinsic test to filter out the unprotectable elements of Cub Club's

---

[2] Emphasis added, and internal quotation marks and citations omitted, unless otherwise indicated.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

emoji.  Doing so here requires filtering out (1) the idea of emoji with five skin tones; (2) using body parts in various shapes and gestures; and (3) applying natural human skin tone colors to body part emoji.

*The idea of emoji with five skin tones.*  In the Complaint, Cub Club alleges that its copyrights protect "emoji with five skin tones" (Compl. ¶ 9), and that Apple infringed its copyrights with Apple's "first diverse emoji ('Accused Products') using the five skin tone keyboard modifier pallet[te]" (*id.* ¶ 46; *see also id.* ¶ 52).  Cub Club now backtracks, however, to say that it is not claiming protection of any "idea" "underlying" its emoji.  (Dkt. No. 56 at 12; *see also id.* at 1 ("CCI is not seeking to monopolize 'an exclusive right over the general concept and practice of applying different skin tones to emoji.'").)  Rightly so, because "ideas[] first expressed by nature"—such as the idea of skin tone variation—"are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003).  According to Cub Club's modified position, then, it is claiming protection only in its particular depictions of the body parts and gestures reflected in its *iDiversicons®* emoji.  (Dkt. No. 56 at 1, 12.)  Cub Club's recognition that it cannot claim a copyright in any idea underlying its emoji (*id.*), and its agreement that the Court should consider only protectable elements of its emoji, means the parties agree the Court must begin its analysis by filtering out the idea of applying five skin tones to emoji.  Only then can the Court consider whether the protected elements of Cub Club's emoji are "substantially similar" to Apple's emoji.

As a result, that Cub Club's emoji and Apple's emoji both apply five skin tones to human body parts cannot form the basis of a legally viable copyright infringement claim.  *See Mattel*, 616 F.3d at 916 ("[A] finding of substantial similarity between two works can't be based on similarities in unprotectable elements."); *see also Masterson v. Walt Disney Co.*, 821 F. App'x 779, 782 (9th Cir. 2020) (finding no substantial similarity where "alleged similarities" were "unprotectable").  And because the only substantial similarity Cub Club asserts in its Complaint is the application of five skin tones to emoji body parts, its copyright claim must be dismissed.  *See Masterson*, 821 F. App'x at 782–83 (affirming grant of motion to dismiss after filtering out "[a]ll of the asserted similarities"); *see also* Compl. ¶ 46 (identifying accused work as Apple's "five skin tone keyboard

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1    modifier pallet[te]"); *id.* ¶ 49 (referring to Apple's "emoji with five skin tone options"); *id.* ¶ 52

2    ("Apple's five skin tone version of the 'Oncoming Fist' emoji is the same or substantially similar

3    to CCI's copyrighted five skin tone 'Oncoming Fist' emoji.").

4          Cub Club tries to avoid this inexorable result by mischaracterizing Apple's argument

5    regarding the unprotectability of the idea of emoji with five skin tones as an argument to apply the

6    "merger" doctrine "to bar CCI from seeking any protection over its Copyrighted Works." (Dkt.

7    No. 56 at 11.) Not so. Apple does not contend that (a) emoji in general, (b) emoji representing

8    body parts, or (c) emoji representing body parts in multiple skin tones, constitute ideas that "can

9    be expressed 'in only one way'" such that the merger doctrine applies. (*Cf. id.* at 1 (quoting *Ets-*

10   *Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000)).) Quite the contrary: Apple agrees

11   that there are multiple ways of representing body part emoji in multiple skin tones. That, in fact,

12   is the point of Apple's motion: its own copyright-protected artwork depicting body part emoji in

13   an array of colors are *different* than Cub Club's. The only thing they have in common is the fact

14   that both plaintiff's and defendant's emoji depict body parts in (different) arrays of colors.

15         Contrary to Cub Club's argument, the law does not permit the Court to decline to filter out

16   unprotectable aspects of Cub Club's emoji and instead rely on a gestalt impression of similarity

17   generated by the side-by-side images of Cub Club's and Apple's emoji. (Dkt. No. 56 at 10.) As

18   the cases Cub Club relies on show, the question before the Court is not whether Cub Club has

19   alleged that the works are substantially similar at a glance, but rather whether Cub Club has alleged

20   that they are "substantially similar *in their protected elements*." *Walls v. Uniradio Corp.*, No. 16-

21   cv-242, 2017 WL 35573, at *3 (S.D. Cal. Jan. 3, 2017).[3] And as the side-by-side images Cub Club

22   itself put forth demonstrate, they are not: the colors, lines, and other objective stylings of the two

23

---

24   [3] Cub Club asserts that "courts in this jurisdiction frequently determine the sufficiency of a
     copyright infringement claim based on . . . the alleged substantial similarity between the registered

25   copyright and the defendant's work alone, without the need to filter out 'unprotectable items.'"
     (Dkt. No. 56 at 8 n.1 (citing *Johnson v. Lewis*, No. 17-cv-01877, 2018 WL 4998278 (C.D. Cal.

26   May 30, 2018), and *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).) The cases it
     cites, however, demonstrate that the opposite is true. In *Johnson*, the court observed—contrary to

27   Cub Club's position—that "a court *must* filter out and disregard the non-protectable elements in
     making [its] substantial similarity determination." 2018 WL 4998278, at *6 (alteration in

28   original). And in *Rentmeester*, the Ninth Circuit likewise focused on the importance of applying
     the extrinsic test at the pleading stage. 883 F.3d at 1118 (explaining that "the court must 'filter
     out' the unprotectable elements of the plaintiff's work").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1   sets of emoji are unmistakably different.  (*See* Dkt. No. 54 at 14–15; *see also infra* at 6–7.)  Even

2   Cub Club does not contend otherwise.

3     ***Body Part Emoji.***  Cub Club does not dispute that the use of body parts, in various natural

4   shapes, is not copyrightable because there is "no copyright protection in general human features."

5   *Blehm v. Jacobs*, 702 F.3d 1193, 1206 (10th Cir. 2012).  Nor does Cub Club dispute that its

6   copyrights therefore do not extend to the creation of emoji that, as a general matter, reflect human

7   body parts in various natural shapes.  Instead, Cub Club contends that it "only seeks to protect

8   CCI's own expression of its 'body part' emoji"—that is, "the specific stylistic renderings" of its

9   emoji. (Dkt. No. 56 at 14.)  The parties are thus in agreement that, as it relates to the shape of the

10   emoji, only the particular "stylized rendering" of the body parts depicted in Cub Club's emoji are

11   protectable.  (*See* Dkt. No. 54 at 13.)  And where, as here, a copyrighted work reflects natural

12   shapes or human features that can only be expressed through a "narrow range of expression," the

13   work is "entitled to only thin copyright protection against virtually identical copying."  *Mattel*, 616

14   F.3d at 915; *see also Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1507 (9th Cir. 1987) (same).

15   The problem for Cub Club is that it did not—and could not—allege in its Complaint that the

16   specific stylistic renderings of Cub Club's emoji are substantially similar, let alone virtually

17   identical, to the specific stylistic renderings of Apple's emoji because Cub Club's own side-by-

18   side comparisons show that they are not.

19     Apple's discussion in its motion of the specific contours of Cub Club's and Apple's

20   thumbs-up emoji (Dkt. No. 54 at 14), applies equally to all of the other emoji at issue, including

21   the ears and pointed index fingers depicted below.  Whereas Cub Club's ear looks more abstract,

22   Apple's ear looks more anatomically detailed, with lines reflecting the various creases and

23   dimensions.  (*See* Compl. ¶ 52.)  Cub Club's ear has a thick dark line border in the shape of an

24   inverted pear, whereas Apple's ear has a thin border line that blends in with the main ear and is in

25   the shape of a lima bean.  (*See id.*)  Cub Club's ear has two prominent interior lines, while Apple's

26   ear has an interior line that forms a softer "s" shape with a darker sketch representing the ear canal.

27   (*See id.*)  Simply put, the drawings are different and certainly not "virtually identical."  They are

28   both ears, but they are ears rendered through different artistic expression.  So too for the index

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

fingers—the lines, borders, and internal shading all vary, and Cub Club's finger shows part of a wrist, while Apple's finger does not.  (*See id.*)

| iDiversicons® Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
|  |  |
| iDiversicons® Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|  |  |

(*Id.*)

Although Apple pointed out this pleading failure in its motion (Dkt. No. 54 at 14), even now Cub Club does not attempt to allege or describe the specific substantial similarities between the artistic, protectable elements of the respective drawings.  (Dkt. No. 56 at 14.)  Nor does it even suggest that the requisite "virtually identical copying" occurred here.  The mere fact that Apple and Cub Club both have emoji that reflect the same hand signals and body parts does not and cannot give rise to a claim of copyright infringement.  *See Blehm*, 702 F.3d at 1206.

***Emoji Colors.***  Cub Club advances two arguments for why the colors it has chosen for its emoji support its claim for copyright infringement.  Neither works.

First, Cub Club argues that it "does, in fact, contend that the colors of Apple's emoji are substantially similar to CCI's Copyrighted Works."  (Dkt. No. 56 at 14.)  Not only do such allegations appear nowhere in Cub Club's Complaint, they are conclusively foreclosed by what Cub Club does allege in its Complaint.  All of the side-by-side images of Cub Club's and Apple's emoji in the Complaint—like the example below—show that Cub Club's emoji and Apple's emoji are expressed using *different* colors.  (*See* Compl. ¶ 52.)

| iDiversicons® Emoji Registered: 07/31/2013 (*09/26/2013) | Apple iOS 13.3 Released: 12/10/2019 |
|---|---|
| Copyright No. VAu 001-152-200 | |
| Copyright No. VAu 001-180-102* | |
| Copyright No. VAu 001-152-204 | |
| Copyright No. VAu 001-152-192 | |
| Copyright No. VAu 001-152-187 | |

(*Id.*)

Second, Cub Club argues that the color of its emoji, "in combination with the other protectable features, . . . may be fairly considered by the Court in determining substantial similarity." (Dkt. No. 56 at 14; *see also id.* at 15.) Cub Club does not identify what protectable features it believes should be considered alongside the colors. Even if it had, however, it would not make a difference because any similarity in coloring between Cub Club's and Apple's emoji is due to the fact that both sets of emoji are depicting human-like skin coloring. Copyright protection does not extend to the representation of "generic and generalized" traits in human depictions, like "race, gender, and hair color." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 67, 72 (2d Cir. 2020). As a result, the mere fact that Apple, like Cub Club, has chosen to color its emoji with human-like skin tones—albeit different ones—does not give rise to a viable claim for copyright infringement. *See Mattel*, 616 F.3d at 916 (district court correctly filtered out "age, race, [and]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1   ethnicity" as unprotectable traits that cannot support a copyright infringement claim).[4]

2       Cub Club's only response is to cite *Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir.

3   2002), and *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998), for the proposition

4   that copyright can protect color selection. (Dkt. No. 56 at 14–15.)  Neither case, however, supports

5   the proposition that copyright protection extends to the choice of colors to represent naturally

6   occurring phenomena, like the colors of lakes or body parts.  And of course the law does no such

7   thing.  *Cavalier* observes, in dicta, that an evaluation of whether artwork is substantially similar

8   may involve consideration of "the subject matter, shapes, colors, materials, and arrangement of the

9   representations" in the artwork.  297 F.3d at 826.  But that evaluation happens only *after* a court

10  "filter[s] out . . . the non-protectible [sic] elements" of the work.  *Id.* at 822.  *Streetwise*, in turn,

11  says nothing about the copyrightability of naturally occurring human characteristics, such as skin

12  tone.  Rather, it simply stands for the proposition that the choice of particular colors, combined

13  with the selection of other creative elements, *may* be copyrightable where such choice reflects

14  creative expression.  *See Streetwise*, 159 F.3d at 748 ("we focus on the overall manner in which

15  Streetwise selected, coordinated, and arranged the expressive elements in its map, including

16  color").  Cub Club's own allegations establish that its color selection does *not* reflect its creative

17  expression but rather its attempt to faithfully reflect human racial variation.  That is fatal to its

18  attempt to rely on such color selection as a basis for establishing substantial similarity.

19      Finally, Cub Club's reliance on Apple's registering the copyrights in its own "diverse

20  emoji" (Dkt. No. 56 at 15) says nothing about the *scope* of copyright protection for either Apple's

21  or Cub Club's emoji.  Yes, Apple's emoji reflect copyrightable creative expression, just as Cub

22  Club's seem to.  But the same limitations on the scope of such protection apply equally to both

23

24  ---
    [4] Cub Club contends that *Mattel* is inapposite because it involved the Ninth Circuit's "review of a jury's finding of substantial similarity." (Dkt. No. 56 at 15.)  Cub Club is wrong.  The Ninth
25  Circuit was actually addressing the district court's finding of substantial similarity, not a finding by the jury.  *See Mattel*, 616 F.3d at 914 ("the district court decided that 'substantial similarity' is
26  the appropriate test for infringement . . . [and] it found that the two Bratz sculpts and the overwhelming majority of the Bratz female fashion dolls were substantially similar to Mattel's
27  copyrighted works").  But more importantly, the Ninth Circuit's decision in *Mattel* is instructive not because of its procedural posture but because of its enunciation of principles of copyright law
28  and the "scope of copyright protection." *Id.*  That is why the Ninth Circuit itself has subsequently relied on *Mattel* when reviewing a decision on a motion to dismiss.  *See, e.g.*, *Rentmeester*, 883 F.3d at 1117, 1120 (citing and quoting *Mattel*).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                8

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1   Apple's and Cub Club's emoji.  Nowhere in its copyright registration applications did Apple claim

2   protection in the *idea* of emoji with varying skin tones, or the concept of rendering body parts in

3   five different naturally occurring colors.  And unlike Cub Club, Apple has not made infringement

4   allegations claiming that it exclusively owns rights in such ideas.  That is because the law does not

5   entitle Apple, Cub Club, or anyone else to use copyright to prevent other people from depicting

6   such naturally occurring ideas and concepts.  Rather, both Apple's and Cub Club's copyrights in

7   their emoji are limited to the original, creative expressions embodied in the artwork.

8            **2.**       **Cub Club has not alleged a protectable combination of elements.**

9        In a final attempt to salvage its copyright claim, Cub Club relies on *Satava v. Lowry*, 323

10  F.3d 805 (9th Cir. 2003), to argue that the *combination* of the following elements from its emoji

11  "are numerous enough and original enough" to merit protection: "the 'idea' of application of five

12  different 'skin tones' to emoji, the specific human feature color variations, the number of tones

13  chosen (5), and the reflection of human body parts in various natural shapes."  (Dkt. No. 56 at 16.)

14  In *Satava*, the Ninth Circuit explained that "a combination of unprotectable elements is eligible

15  for copyright protection *only if* those elements are numerous enough and their selection and

16  arrangement original enough that their combination constitutes an original work of authorship."

17  323 F.3d at 811.  In *Satava*, as here, however, "[t]he combination of unprotectable elements" in

18  the works at issue fell "short of this standard."  *Id.*

19        The *Satava* court concluded that "[t]he selection of the clear glass, oblong shroud, bright

20  colors, proportion, vertical orientation, and stereotyped jellyfish form, considered together, lacks

21  the quantum of originality needed to merit copyright protection."  *Id.*  The court warned that

22  concluding otherwise "would give Satava a monopoly on lifelike glass-in-glass sculptures of single

23  jellyfish with vertical tentacles."  *Id.* at 812.  The same conclusion—and concern—is warranted

24  here.  The idea of applying skin tones to emoji, the selection of colors to reflect human skin

25  coloring, the decision to use five skin tones, and the representation of standard human body shapes

26  and gestures, even collectively, "lack[] the quantum of originality needed to merit copyright

27  protection."  *See id.* at 811.  Concluding otherwise would give Cub Club a monopoly on the

28  depiction of standard human body parts in colors that reflect naturally occurring skin tone

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1   variations.  Copyright protection does not stretch so far.  *See Blehm*, 702 F.3d at 1206.

2                                   *        *        *

3        Cub Club argues that, if the Court does dismiss its copyright claim, it should do so without

4   prejudice.  Dismissal without prejudice, however, is appropriate only where it is possible for the

5   plaintiff to allege a set of facts that, if true, would state a claim entitling it to relief.  *See Campbell*

6   *v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010) (dismissing copyright claim with

7   prejudice where the "defect" giving rise to dismissal—lack of substantial similarity between the

8   works—could not "be cured by amendment").  Here, the side-by-side images Cub Club included

9   in its Complaint show that Apple's emoji are not "substantially similar," in the operative legal

10  sense, to any of the protectable elements of Cub Club's emoji.  No amount of repleading can

11  change that result, and dismissal with prejudice is thus warranted.

12        **B.     Cub Club has failed to state a claim for trade dress infringement (Count II).**

13       Cub Club's opposition confirms that it has not identified the concrete elements of its

14  purported trade dress necessary to state a trade dress claim, let alone alleged in more than

15  conclusory fashion that its trade dress is nonfunctional and has acquired secondary meaning.  The

16  trade dress claim must therefore be dismissed as well.

17            **1.     The Complaint does not contain a complete recitation of the concrete**

18                  **elements of Cub Club's asserted trade dress.**

19       Cub Club argues that it provided the requisite "complete recitation of the concrete elements

20  of [its] trade dress," *YZ Prods.*, 2021 WL 2633552, at *8, with the following description:

21            the insertion of an emoji into messages (text messages, e-mails,
            communication app messages, social media apps, and other forms
22          of content generated by mobile device users) on mobile devices by
            selecting from a palette of diverse, five skin tone emoji, comprising
23          one of African-American tone, Asian tone, Latino/Hispanic tone,
            Indian tone, and Caucasian tone.
24

25  (Dkt. No. 56 at 18 (quoting Compl. ¶ 73).)  But this is not a complete recitation of the concrete

26  elements over which Cub Club is claiming protection; it is a description of the functions of

27  "insert[ing]" emoji into messages and "selecting" desired colors.  To argue that it sufficiently

28  alleged that its trade dress is nonfunctional, Cub Club contends that its trade dress "includes

LATHAM&WATKINS℠
ATTORNEYS AT LAW
SAN FRANCISCO

10

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1  unique, distinctive, and non-functional designs," and has "distinctive and non-functional features

2  that identify to consumers that the origin of the *iDiversicons*® emoji is CCI." (*Id.* at 20 (quoting

3  Compl. ¶ 17, Count III ¶ 3, Count IV ¶ 12).)  Nowhere in the Complaint, however, does Cub Club

4  factually allege what its purportedly "unique" and "distinctive" designs and features are, let alone

5  the concrete elements in which they are embodied.  As a result, the Complaint does not provide

6  "adequate notice" of the concrete elements of Cub Club's claimed trade dress and must be

7  dismissed. *See YZ Prods.*, 2021 WL 2633552, at *7 (collecting cases).

8              **2.      Cub Club's claimed trade dress is functional.**

9         Cub Club advances two arguments for why its trade dress claim should not be dismissed

10  for failure to sufficiently plead functionality.  Neither has merit.

11         First, Cub Club argues that it has sufficiently alleged that its trade dress is nonfunctional

12  by "repeatedly describ[ing]" the features of its trade dress as "nonfunctional." (Dkt. No. 56 at 20.)

13  But it is well established that conclusory allegations, such as simply saying that trade dress is

14  "nonfunctional," without more, are insufficient to state a claim for trade dress infringement.  *See,*

15  *e.g.*, *Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95, 98 (9th Cir. 2020) ("The

16  district court was not required to accept as true Appellants' legal conclusion that the trade dresses

17  were nonfunctional or the additional conclusory statements offered to support nonfunctionality.").

18  And neither *BLT Restaurant Group LLC v. Tourondel*, No. 10-cv-06488, 2011 WL 3251536

19  (S.D.N.Y. July 19, 2011), nor *International Diamond Importers, Inc. v. Oriental Gemco (N.Y.),*

20  *Inc.*, 64 F. Supp. 3d 494 (S.D.N.Y. 2014)—on which Cub Club relies—is to the contrary.  In *BLT*

21  *Restaurant*, the court found the plaintiff's allegations of nonfunctionality sufficient because they

22  discussed why the plaintiff's trade dress—a restaurant menu—was "more than a mere list of food

23  items."  2011 WL 3251536, at *3.  The complaint there contained, for example, a detailed

24  discussion of the unique and distinctive aspects of the menu—including the titles of its offerings—

25  that contributed to the menu's overall look and feel.  *See BLT Restaurant*, No. 10-cv-06488, Dkt.

26  No. 27, ¶¶ 34–45.  And in *International Diamond*, the court explained that what matters is not

27  whether the plaintiff includes the word "non-functional[]" in its complaint but whether the plaintiff

28  "include[s] sufficient allegations to satisfy the requirement of pleading non-functionality."  64 F.

11

Supp. 3d at 522 n.188.[5]  There, the court concluded the plaintiff had included such allegations, *id.*, by, for example, explaining that its trade dress incorporated a "distinctive off-center asymmetric design comprising a large center jewel or piece with the size and/or quantity of pendants on one side being greater than the other side" that "serv[ed] to identify the products in the minds of consumers." *Id.* at 523.[6]

Cub Club's allegations of "unique, distinctive" designs are equally unavailing because Cub Club has not identified *what* those designs are, let alone why they are nonfunctional.  All Apple—and this Court—knows is that Cub Club claims its trade dress is "the insertion of an emoji into messages . . . on mobile devices by selecting from a palette of diverse, five skin tone emoji."  Yet that, of course, is a paradigmatic example of a product's function—the insertion of emoji into electronic messages.

Cub Club contends its trade dress "covers the 'overall look and feel' of the *display* of emoji in a singular, horizontal line, as shown in its *iDiversicons®* application and iPhone keyboard." (Dkt. No. 56 at 21 (emphasis in original).)  There are several problems with Cub Club's position. First, nowhere in the Complaint does Cub Club articulate this description of its claimed trade dress. *See Frison v. Accredited Home Lenders, Inc.*, No. 10-cv-777, 2011 WL 2729241, at *3 (S.D. Cal. July 13, 2011) ("allegations made outside of the complaint may not be considered").  Second, Cub Club's own purported articulation of the "concrete elements" of its trade dress in its opposition says nothing about the display of emoji in a singular, horizontal line, but instead focuses exclusively on the insertion of emoji into messages.  (*See* Dkt. No. 56 at 18; *see supra* at 10.)  And third, displaying emoji in a line on a keyboard for insertion into a message *is* a functional design, not a protectable trade dress.  *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32–

---

[5] Cub Club incorrectly describes *International Diamond* as denying a motion to dismiss "because allegations stating the trade dress was 'unique' and 'associated' with the Plaintiff were sufficient to plead non-functionality." (Dkt. No. 56 at 20.)  The portion of *International Diamond* Cub Club purported to quote was, in fact, a parenthetical describing the decision in *BLT Restaurant*.

[6] In the third case Cub Club cites, *Leapers, Inc. v. SMTC, LLC*, No. 14-cv-12290, 2014 WL 4964376 (E.D. Mich., Oct. 3, 2014), the Court appears to have accepted conclusory allegations of functionality at the pleading stage.  In so doing, it reached a conclusion that is directly contrary to the binding precedent of this Circuit and the Supreme Court.  *See, e.g., Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("Threadbare recitals . . . supported by mere conclusory statements" do not suffice. (quoting *Iqbal*, 556 U.S. at 678)).  *Leapers* thus does not provide a basis for concluding that Cub Club's conclusory allegations of nonfunctionality are sufficient here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

34 (2001) (aspect of product that "is essential to the use or purpose of the [product]" or "the reason the [product] works" is functional).

Cub Club attempts to avoid its obligation to make plausible allegations of nonfunctionality by contending that it need not allege "***how*** its Trade Dress is nonfunctional." (Dkt. No. 56 at 20 (emphasis in original).)  While Cub Club's position is contrary to numerous decisions addressing trade dress claims, both within this Circuit and beyond, *e.g.*, *Virgin Scent, Inc. v. Bel Air Nats. Care Corp.*, No. 17-cv-08284, 2018 WL 5264145, at *4 (C.D. Cal. Feb. 8, 2018), Cub Club cannot prevail even under the lesser pleading standard it urges.  Regardless of whether Cub Club must allege how its trade dress is nonfunctional, it unquestionably must do more than simply allege "nonfunctionality."  *See, e.g.*, *Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*, No. 19-cv-07652, 2019 WL 8064073, at *5 (C.D. Cal. Dec. 4, 2019) ("conclusory statement that [a trade dress] is non-functional" is insufficient to plead nonfunctionality); *Profade Apparel, LLC v. Road Runner Sports, Inc.*, No. 18-cv-1254, 2020 WL 5230490, at *5 (S.D. Cal. Sept. 2, 2020) (allegation that purported trade dress "contain[ed] distinctive elements of non-functional trade dress" was insufficient to allege nonfunctionality).

Finally, Cub Club relies on *Secalt S.A. v. Wuxi Shenxi Construction Machinery Co.*, 668 F.3d 677 (9th Cir. 2012),[7] to argue that a "determination of non-functionality . . . is a question of fact inappropriately considered in a motion to dismiss." (Dkt. No. 56 at 19.)   Cub Club misunderstands the applicable pleading standards.  *Secalt* simply states that "functionality . . . is a question of fact."  668 F.3d at 683.  It says nothing about the plausible, factual allegations necessary to survive a motion to dismiss, let alone "relieve [Cub Club] of its obligation to adequately *plead* non-functionality in order to state a claim for trade dress infringement." *Virgin Scent*, 2018 WL 5264145, at *5 (emphasis in original).  And where, as here, a plaintiff "fails to support its conclusory allegation of non-functionality," dismissal is warranted. *See id.*

**3.**     **Cub Club has not identified any allegations in its Complaint that plausibly establish secondary meaning.**

---

[7] Abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (en banc) (per curiam).

1    Cub Club first argues that its allegations that Apple copied its trade dress are sufficient to

2  establish secondary meaning.  (Dkt. No. 56 at 22.)  While secondary meaning can be established

3  through "proof of intentional copying by the defendant," *Kittrich Corp. v. United Indus. Corp.*,

4  No. 17-cv-06211, 2017 WL 10434389, at *5 (C.D. Cal. Oct. 18, 2017), Cub Club's own Complaint

5  refutes any allegation of copying—intentional or otherwise.  As the side-by-side comparison below

6  shows, Apple's emoji keyboard is not a copy of Cub Club's emoji keyboard.

7

8         

9

10

11

12

13

14  (*Compare* Compl. ¶ 18, *with* Compl. ¶ 46.)

15    Moreover, "[i]ntentional copying supports a finding of secondary meaning only where the

16  defendant intended to confuse consumers and pass off its product as the plaintiff's." *Kittrich*, 2017

17  WL 10434389, at *6 (quoting *Cont'l Lab'y Prods., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992,

18  1010 (S.D. Cal. 2000)).  Although Cub Club may "believe[] that customers are likely to be

19  confused" (Compl. ¶¶ 74–75), Cub Club does not offer more than conclusory allegations, devoid

20  of factual support, that Apple *intended* to confuse consumers and pass its emoji keyboard off as

21  Cub Club's.  This case is thus like *Kittrich*, where a conclusory allegation that the defendants

22  "willfully and intentionally mimicked the EcoSmart trade dress" did not suffice to allege secondary

23  meaning.  2017 WL 10434389, at *6.

24    Cub Club also argues that its allegations of "use and advertising" of its "Trade Dress of the

25  *iDiversicons®* application" over "a substantial period of time" are likewise sufficient to establish

26  secondary meaning.  (Dkt. No. 56 at 23.)  Here, too, Cub Club's Complaint falls short.  "While the

27  existence of secondary meaning may be inferred from evidence relating to the nature and extent

28  of the public exposure achieved by the designation, . . . conclusory allegations about the existence

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1   of marketing efforts . . . do not sufficiently allege that a trade dress has acquired a secondary

2   meaning." *Green Crush LLC v. Paradise Splash I, Inc.*, No. 17-cv-01856, 2018 WL 4940825, at

3   *5 (C.D. Cal. May 3, 2018).  Yet that is all Cub Club has offered up here—conclusory allegations

4   that it "has invested significant resources in the design, development, distribution, advertising, and

5   marketing of *iDiversicons®* emoji."  (*See, e.g.*, Compl. ¶ 15.)  This does not come close to

6   sufficiently, plausibly alleging facts to show that Cub Club's alleged trade dress has acquired a

7   secondary meaning.  *See Green Crush*, 2018 WL 4940825, at *5.

8                                               *       *       *

9           As with Cub Club's copyright claim, Cub Club's own pleadings establish that it cannot

10   allege a set of facts sufficient to establish that Apple is liable for trade dress infringement.  As

11   such, the trade dress claim should likewise be dismissed with prejudice.  *See Campbell*, 718 F.

12   Supp. 2d at 1116.

13          **C.      Cub Club's state law claims (Counts III, IV, V) should be dismissed.**

14          Cub Club admits that all of its state law claims are "rooted in" and "predicated on" its trade

15   dress claim.  (*See* Dkt. No. 56 at 24.)  Cub Club thus concedes that, if its trade dress claim fails,

16   so too do its state law claims.  (*Id.*)  And for the reasons explained above, as well as in Apple's

17   motion to dismiss, Cub Club has not stated a claim for trade dress infringement.  (*See* Dkt. No. 54

18   at 15–20; *supra* at 10–15.)  Cub Club's state law claims must therefore be dismissed as well.

19          To the extent the Court chooses to address only Cub Club's federal claims, the Court

20   should—as Apple argued in its motion to dismiss—"declin[e] to exercise supplemental jurisdiction

21   over" Cub Club's state law claims.  *See Lima v. U.S. Dep't of Educ.*, 947 F.3d 1122, 1128 (9th Cir.

22   2020).  Cub Club does not address this argument and thus presumably agrees that, should the Court

23   decline to address its state law claims, dismissal is warranted.  *See, e.g.*, *Ramirez v. Ghilotti Bros.

24   Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (concluding that failure to address

25   argument amounted to a concession).

26   **III.    CONCLUSION**

27          For the foregoing reasons, Apple respectfully requests the Court dismiss Cub Club's

28   Complaint.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK

1

Dated:  October 20, 2021                                    Respectfully submitted,

2

3                                                           LATHAM & WATKINS LLP

4                                                           By: */s/ Andrew M. Gass*
                                                            Andrew M. Gass (Bar No. 259694)
5                                                           *andrew.gass@lw.com*
                                                            505 Montgomery Street, Suite 2000
6                                                           San Francisco, CA 94111-6538
                                                            Telephone: 415.391.0600
7                                                           Facsimile: 415.395.8095

8                                                           Gabriel S. Gross (Bar No. 254672)
                                                            *gabe.gross@lw.com*
9                                                           140 Scott Drive
                                                            Menlo Park, CA 94025
10                                                          Telephone: 650.328.4600
                                                            Facsimile: 650.463.2600

11                                                          Elana Nightingale Dawson (*pro hac vice*)
                                                            *elana.nightingaledawson@lw.com*
12                                                          Carolyn M. Homer (Bar No. 286441)
                                                            *carolyn.homer@lw.com*
13                                                          555 Eleventh Street, NW, Suite 1000
                                                            Washington, D.C. 20004-1304
14                                                          Telephone: 202.637.2200
                                                            Facsimile: 202.637.2201

15

16                                                          *Attorneys for Defendant Apple Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

APPLE INC.'S REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
CASE NO. 5:21-cv-06948-LHK