UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUB CLUB INVESTMENT, LLC, <br><br>   Plaintiff, <br><br> v. <br><br> APPLE INC, <br><br>   Defendant. | Case No. 21-cv-06948-VC <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 54 |

Cub Club Investment created an app that allowed people to send racially diverse emoji. According to the complaint, when Apple learned of the app, it liked the idea—so much so, in fact, that it copied it. But even assuming the allegations in the complaint are true, the idea is all that Apple copied. Because Cub Club has not alleged the copying of any protectable element of its emoji, the motion to dismiss the copyright claim is granted. And because Cub Club has not adequately alleged trade dress infringement, the remaining claims are dismissed as well.

1. "[C]opyright law does not forbid all copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). To survive a motion to dismiss, a plaintiff must allege that the defendant "copied enough of the protected expression . . . to establish unlawful appropriation." *Id.* at 1118. In making this comparison, one of two standards applies, depending on the range of possibilities open to someone attempting to implement the idea. Where the range of the possible expression of the underlying idea is "broad," a work will infringe if it is "substantially similar" to the copyrighted work. *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010) (quoting *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1446–47 (9th Cir.

1994)). But "[i]f there's only a narrow range of expression . . . then copyright protection is 'thin' and a work must be 'virtually identical' to infringe." *Id.* at 914.

The copyrighted works are expressions of Cub Club's idea of racially diverse emoji. Each of the emoji described in the complaint are variations on this theme, depicting body parts in certain positions (thumbs up; thumbs down; a fist; etc.) in varying skin tones. There aren't many ways that someone could implement this idea. After all, there are only so many ways to draw a thumbs up. And the range of colors that could be chosen is similarly narrow—only realistic skin colors (hues of brown, black, and beige, rather than purple or blue) fall within the scope of the idea. Cub Club's emoji are therefore "entitled to only thin copyright protection against virtually identical copying." *Mattel*, 616 F.3d at 915.

As alleged in the complaint, Apple's emoji are not "virtually identical" to Cub Club's. Compared side by side, there are numerous differences. Whereas Cub Club's emoji are filled in with a gradient, the coloring of Apple's emoji are more consistent. The shape of Apple's thumbs-up emoji is cartoonish and bubbled, while Cub Club's is somewhat flatter. Many of Cub Club's emoji have shadows; Apple's do not. Even the colors used are distinct—although both Cub Club and Apple have chosen a variety of skin tones ranging from dark to light, the specific colors vary. These differences are sufficient to take Apple's emoji outside the realm of Cub Club's protected expression.

2. To state a claim for trade dress infringement, a plaintiff must allege that "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009).

The trade dress alleged in the complaint is functional. The asserted trade dress consists of "the overall look and feel" of Cub Club's "products," including "the insertion of an emoji into messages . . . on mobile devices by selecting from a palette of diverse, five skin tone emoji." This is functional in the utilitarian sense, as each of these features—the *insertion* of an emoji into messages; the ability to *select* the desired emoji from a palette—"relates to the performance of

the product in its intended purpose." *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006). Even the fact of the "palette" of diverse skin tones is functional, as this aspect of the product, though aesthetic, serves a "purpose wholly independent of any source identifying function." *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020) (quoting *Millennium Laboratories, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016)). You can't build a product for sending racially diverse emoji if the emoji are not racially diverse.

Cub Club's allegations that the asserted trade dress goes beyond these functional elements to the "look and feel" of the product is not enough to save its claim. "As a matter of law, a product's 'overall appearance' is functional, and thus unprotectable, where the product is 'nothing other than the assemblage of functional parts.'" *Blumenthal Distributing, Inc.*, 963 F.3d at 866 (quoting *Leatherman Tool Group, Inc. v. Cooper Industries, Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999)). In the absence of allegations identifying non-functional elements of Cub Club's product, such a conclusory statement is not sufficient to plausibly allege that the asserted trade dress is non-functional.

This alone is enough to doom Cub Club's trade dress claim. But the allegations fail on the other elements as well. The complaint is devoid of allegations that the product has attained secondary meaning. And the complaint does not lead to a plausible inference that consumers are likely to face any confusion between Cub Club's product and Apple's. After all, Cub Club's product is a standalone application, while Apple's is embedded within the phone keyboard.[1]

The motion to dismiss the trade dress claim is therefore granted. And because Cub Club's state law claims each depend upon the validity of the trade dress allegations, these claims are dismissed as well.

\* \* \*

---

[1] The Court reads the complaint as alleging trade dress over Cub Club's app, rather than the individual emoji. But a trade dress claim over the individual emoji would fail for the same reasons.

3

The motion to dismiss is granted. Having seen many of the emoji side by side in the complaint, the Court is skeptical that Cub Club will be able to allege copyright or trade dress infringement in an amended complaint. But in the interest of caution, the complaint is dismissed with leave to amend.[2] Any amended complaint must be filed within 14 days of this order. If none is filed by that time, the dismissal will be with prejudice.

**IT IS SO ORDERED.**

Dated: February 16, 2022

VINCE CHHABRIA
United States District Judge

---

[2] The parties are reminded that briefing in any future motions must comport with this Court's page limits. *See* Standing Order for Civil Cases Before Judge Vince Chhabria, at ¶ 38.